## Case No. 2,419.

### The CAROLINE.

[1 Lowell, 173.][1]

District Court, D. Massachusetts. Oct., 1867.

MARITIME LIENS AGAINST FREIGHT — ADMIRALTY JURISDICTION—GARNISHMENT BY STATE COURT.

1. It is no good defence to a petition that freight may be brought into the admiralty court to answer the exigency of suits for mariners' wages and materials which are a charge on the freight, that the consignee, before the libels were filed, was summoned as trustee or garnishee of the ship-owner in a court of common law.

[See Wall v. The Royal Saxon, Case No. 17,093.]

2. The courts of common law of Massachusetts have no power to adjust maritime liens upon a fund attached under the foreign attachment law of that state, and the consequence of giving priority to such an attachment might be the destruction of the liens. The court of common law would be bound to guard against this consequence by discharging the supposed trustee, or by waiting till the liens were adjusted; and this court may proceed to adjust them, and may order the freight to be brought in for that purpose.

[Cited in Ross v. Bourne, 14 Fed. 860.] —

3. Such a course involves no conflict of jurisdiction, and is not inconsistent with the decisions in Taylor v. Carryl, 20 How. [61 U. S.] 583, and Freeman v. Howe, 24 How. [65 U. S.] 450.

In admiralty. Three libels were brought against the brig Caroline and her freight,

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

one for wages and two for supplies and materials, and the value of the vessel was shown to be insufficient. The Boston Gas Light Company, owners and consignees of the cargo, being required to show cause, under the 38th admiralty rule of the supreme court, why the freight should not be brought in to answer the exigency of the suit, appeared under protest, and showed that they had been summoned as trustees of the ship-owner, in the superior court of the commonwealth before the filing of the libels.

C. T. Russell, for the freighters. This court has no jurisdiction to make the order prayed for, because the money is already in the custody of a court of the state. By Gen. St. Mass. c. 142, § 21, this process is an attachment, which brings the case within the decisions of Taylor v. Carryl, 20 How. [61 U. S.] 583, and Freeman v. Howe, 24 How. [65 U. S.] 450.

H. W. Muzzey and R. R. Bishop, for the several libellants.

LOWELL, District Judge. The decision in Taylor v. Carryl [supra], as explained in Freeman v. Howe [supra], and in Buck v. Colbath, 3 Wall. [70 U. S.] 334, does not operate to defeat the paramount maritime liens, but only to delay their enforcement, because the sheriff can sell only the right of the ship-owner, subject to those liens; the practical effect of which I find to be that the sheriff usually waives his possession when libels are filed for maritime liens, because his title becomes of little or no market value. So. that we have come back pretty much to the practice which prevailed before the leading case was decided. If that doctrine applies to an attachment of credits, its application in any given case may have the effect to destroy the maritime liens, because after the money has once been paid over by the freighter on due process of law, the remedy of the lien-holders will be very difficult of enforcement, to say the least. Judge Blatchford has refused to extend the rule to such a case as this; and has stated very forcibly the hardship which would follow such an application of it. The Sailor Prince [Case No. 12,218].

I have come to a like conclusion upon a consideration of the nature and effect of our foreign attachment law. By that law it is, indeed, enacted that the credits shall be considered attached, and be held to respond to the final judgment in the same manner as goods or estate when attached by the ordinary process. But in point of fact there is no possession taken by the sheriff, but merely an order served on the trustee to show cause why the judgment, when recovered, should not be satisfied out of the credits of the judgment debtor in his hands. If he answers that the credits are not due to the principal defendant, but to some one else, he must be discharged. And if he pays over

to the adverse holder in the mean time, he is not in contempt, but is merely paying at his own risk, and the sheriff has nothing whatever to do about it. It follows that the fund is not really in the custody of the court, or of its officers, and that our trustee process is very different in this respect from the foreign attachment of the ship in the principal case, which was what we call in Massachusetts by the mere name of attachment. Our process does not undertake to impair obligations already existing, and if it appears that there are such obligations sufficient to exhaust the whole fund, the trustee must be discharged. True, there is a provision for permitting claimants of the fund to appear, but this is only for the purpose of protecting the trustee; there is no power to adjust and liquidate the adverse claims, and no process for their payment, but merely a course of proceeding which may bar the adverse claimant thereafter in any suit by by him against the trustee, if his claim should be disallowed. It may be maintained with much plausibility that a credit which is incumbered is not liable to attachment. The general doctrine, in Massachusetts, is that incumbered goods cannot be attached. Badlam v. Tucker, 1 Pick. 399. This rule has been modified by statute, but in a mode which carefully preserves the rights of the holder of any mortgage pledge or lien, and requires payment to be made to him within ten days after notice. Gen. St. c. 123, § 62 et seq. There are no analogous provisions for credits that are pledged or incumbered; and it seems to me that it would be the duty of the court of common law, on proof that a fund was so incumbered, to discharge the trustee. In the case at bar, if the gas company answers to the trustee process, as it is bound to do on notice, that the fund in its possession is not due to the owners but to the master, who has a lien on it for wages and disbursements, the trustee must be discharged, for the master in such a case is like a factor who has made advances on the goods consigned to him, and has a right to collect the price of them. Lewis v. Hancock, 11 Mass. 72; Richardson v. Whiting, 18 Pick. 530; Manter v. Holmes, 10 Metc. [Mass.] 402. And it can make no difference that the master is passive and the persons applying to the court are the sailors themselves, and others through whom the master derives his lien. If it should appear that the amount of the liens on the fund were not sufficient to absorb it entirely, the court of common law would perhaps have the right, if the statute under which the process is brought can be construed to extend to such a case, to charge the trustees to the extent of the surplus. but even that could not be done until the only court that has original jurisdiction of these maritime liens can adjust and liquidate them, so as to ascertain whether any thing will remain liable to the attachment, and this cannot lawfully

be done by the court of admiralty until the fund is before it. So that unless the order now prayed for can be passed, each court must forever await the action of the other. The court of admiralty, on the other hand, can adjust and marshal all the liens, including that by the attachment, and can order any surplus to be paid into the superior court, or to be held to abide its action.

Upon the question of a supposed conflict of jurisdiction, an important case in England is very much in point, where to a suit by ship-owner against freighter, for the freight money, it was held by three courts, including the highest, to be a good plea in bar, that, since action brought, the freighter had been required to pay the money into the court of admiralty, and had paid it accordingly. Place v. Potts, 8 Exch. 705, 10 Exch. 370, and 5 H. L. Cas. 383.

Ordered that the freight money be brought in