## MORAN *v.* STURGES.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 892. Argued March 13, 14, 1894. — Decided May 26, 1894.

On the 31st day of July, 1891, proceedings were commenced in the Supreme Court of the State of New York for the voluntary dissolution of a Steam Tow Boat Company; a corporation organized under the laws of that State,

and an order was made on that day restraining creditors from bringing action and requiring all to show cause, on the 16th day of November, 1891, before a referee, why the prayer of the petitioner should not be granted. An order was made at the same time for the appointment of a receiver, which required him to give bonds before entering on the duties of his office. On the 1st of August, 1891, in the forenoon of that day, these orders were entered and the papers filed in the office of the clerk of the court. On the afternoon of the same day, which was Saturday, and on Monday, August 3, libels in admiralty were filed in the District Court of the United States for the Eastern District of New York to enforce maritime liens against six of the vessels of said Tow Boat Company's fleet. On the 1st of August the marshals for the district seized and took into custody three of the six, and on the 3d of August did likewise with the other three. On the 4th of August the receiver filed his official bond, duly approved, and entered upon the discharge of his duties. On the same day he went to take possession of the six vessels and found them in the custody of the marshal. Thereupon, on his motion, process issued against the several libellants, to bring them before the Supreme Court of the State, where, after hearing, they were enjoined from taking any further proceedings on their libels. This judgment of the Supreme Court being affirmed by the Court of Appeals, and the judgment of the latter court being remitted to the Supreme Court and entered there as its judgment, the libellants sued out a writ of error to this court. *Held*, That the state court had no jurisdiction *in personam* over the libellants as holders of maritime liens when the libels were filed; that the question of jurisdiction was, as the case stood, one for the District Court to decide in the first instance; that the District Court had jurisdiction; and that the judgment under review was in effect an unlawful interference with proceedings in that court.

Though courts, for the purpose of protecting their jurisdiction over persons and subject-matter may enjoin parties who are amenable to their process, and subject to their jurisdiction from interference with them in respect of property in their possession or identical controversies therein pending, by subsequent proceedings as to the same parties and subject-matter in other courts of concurrent jurisdiction; and though, where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court; yet, upon the facts disclosed in this record, the District Court was not required to stay its hand until the termination of the proceedings in the state court, that court being without jurisdiction as to maritime liens, and being incapable of displacing them.

THE Schuyler Steam Tow-Boat Company was a corporation organized under the laws of New York. On July 31, 1891, the trustees of the company filed a petition in the Supreme Court of the State of New York at Albany County, at cham-

bers, for the voluntary dissolution of the company under §§ 2419 and 2423 of the Code of Civil Procedure of that State, and in their petition prayed for the appointment of a temporary receiver under § 2423 as amended, whose powers and duties were specified in § 1788. (Code Civ. Proc. N. Y. 1892, pp. 643, 835, 836.) The petition stated that the stock, effects, and other property of the corporation were not sufficient to pay the just amounts for which it was liable, nor to afford reasonable security to those who might deal with it, for the reasons that the corporation was indebted to the Holland Trust Company of New York in a large sum of money on a demand loan, payment whereof had been demanded, and that there were no available assets to meet the same; that the corporation had already defaulted upon certain claims set forth in the schedule attached, which were secured by notes which had been presented for payment and payment refused for want of such assets; that "other claims set forth in the schedule are either due or rapidly becoming due; and that there is serious danger of the company's vessels, constituting the sole property of the said company, being libelled in the admiralty courts of the United States for such claims as constitute maritime liens, including the claims for services and supplies rendered to said vessels. That in the event of said vessels being libelled and sold under a decree in admiralty, there would be little hope of realizing the value of said vessels on such sale, and the security of creditors and stockholders would be seriously imperilled;" that the assets must be realized by sale, and would be insufficient to pay all the claims in full, etc. Thereupon the presiding judge, the attorney general of New York appearing and consenting thereto, signed an order to show cause before a referee therein named, on November 16, 1891, why the company should not be dissolved, and by the same order appointed Frank D. Sturges temporary receiver of the property, "with all the powers and subject to all the duties that are defined as belonging to temporary receivers appointed in an action in § 1788 of the code." It was further ordered "that all creditors of said corporation, be and they are hereby restrained and enjoined

from bringing any actions against the said corporation for the recovery of a sum of money, and from taking any further proceedings in any action already commenced against the said corporation for such purpose." A copy of the order was directed to be published at least once in each of the three weeks immediately preceding November 16, 1891, and that a copy be served upon each of the several persons specified in the schedule attached to the petition as a creditor or stockholder of the corporation. It was further ordered that before entering upon the duties of such receivership the said receiver should execute and acknowledge in due form of law a bond in the penal sum of $50,000, payable to the State of New York, with sureties. This order was entered and the petition and accompanying papers filed in the office of the clerk of the court for Albany County in the forenoon of August 1, 1891. On the afternoon of August 1, 1891, which was Saturday, and on Monday, August 3, 1891, plaintiffs in error, Michael Moran and other coöwners of certain tugs, filed libels in admiralty in the District Court of the United States for the Eastern District of New York against certain steamboats, which were the property of the Schuyler Company. Process was issued under said libels to the United States marshal for that district, and on August 1 he seized and took into his possession the steamboats Niagara, Belle, and Syracuse, and affixed his notice of seizure thereto. On August 3 he seized and took into his custody the steamboats Vanderbilt, Jacob Leonard, and America, and affixed his notice of seizure thereto. On August 4, 1891, the receiver went on board the steamboats mentioned and ascertained that the marshal was in possession thereof by his keepers, and he also found affixed to the boats the marshal's notice of seizure. The receiver applied to the state court, August 26, and was duly authorized by order that day in that court entered to contest said libels or to take such other proceedings therein as might be advisable, and to use the funds in his hands for the purpose of giving such security as he might be able, as required in contesting the libels. In September, 1891, the receiver made a motion in the United States District Court for an order

directing the marshal to withdraw from the custody of the steamboats held under the admiralty process. The motion was denied on the ground that the question should be raised by answer to the libels, and leave was given to answer accordingly. The receiver availed himself of this permission and appeared in one action against each vessel and filed his answer contesting the jurisdiction of the admiralty court. He thereafter made an application to this court for a writ of prohibition to the District Court, which was denied November 13, 1891.

On November 10 the receiver verified a petition addressed to the Supreme Court of the State of New York, in which he asked that plaintiffs in error herein might be enjoined from prosecuting the libels which they had filed in the District Court of the United States for the Eastern District of New York. Affidavits were attached to the petition, and on these papers and the preceding record one of the justices of the Supreme Court of the State entered an order November 11, 1891, that plaintiffs in error show cause at a special term of the court, November 14, 1891, why they should not be enjoined from taking any further proceedings on their libels in the United States courts, and in the meantime plaintiffs in error were enjoined and restrained from taking any further action under their libels, and from attempting any proceeding looking to the condemnation or sale of the steamboats or any of them. Affidavits in opposition were presented by plaintiffs in error on the hearing of the order to show cause. Certain allegations were made in the petition and the moving affidavit of a knowledge by Moran at the time he filed the first libel that a receiver of the company had been appointed. These were denied, and Moran set forth under oath all his information and sources of information on the subject of the proceedings contemplated to dissolve the company, with the dates. The petition set forth that if libellants were permitted to prosecute their libels and obtain decrees thereunder, and the steamboats were condemned and sold to satisfy the same, it would result in the vessels being sold for less than their value, and that the interest of the corporation and the general creditors thereof would be greatly sacrificed; that the

vessels would bring a much larger price if sold as a fleet; that all creditors who were entitled to a preference by having liens as well as all unsecured creditors could be fully protected in this proceeding; that petitioner was advised that a larger portion of the claims for which libels had been filed did not constitute liens against the vessels, nor were libellants entitled to any preference for such portion of their claims. The petition further stated that under the order of August 26 the receiver had not sufficient funds to give security to contest all of the libels, and was wholly unable to give the security necessary to release the vessels from the marshal's custody, and for which reason, unless the libellants were restrained from prosecuting the libels, the receiver would be unable to prevent the condemnation and sale of the steamboats. The petition also set forth the receiver's application to the District Court of the United States for the Eastern District of New York for an order directing the marshal of the district to surrender the custody of the steamboats; the denial thereof on the ground that the question of jurisdiction ought not to be decided upon motion; the leave to the receiver to answer the libels and contest the jurisdiction by answer; his appearance and answer in one action brought against each steamboat for the purpose of testing the jurisdiction of that court, he not being able, as he alleged, to furnish the security necessary in order to answer all the libels, which were some forty in number. It was also averred that a motion had been made in the District Court by Moran for the sale of the steamboats, and that the proceeds be deposited in court to await the result of the action; that the motion was opposed by the receiver and withdrawn as to the libels in which he had answered; that the motion had since been urged in the actions in which the receiver had not appeared and answered, and that the District Court had intimated that the motion would be granted November 13. Petitioner denied the jurisdiction of the District Court over the steamboats, or any of them, at the time the libels were filed, and asserted that they were at that time in the custody of the state court, and not liable or subject to the attachment made by the marshal. On December 7, 1891,

the special term of the Supreme Court granted the prayer of the receiver and entered an order for an injunction, enjoining plaintiffs in error from taking any further proceedings upon their libels in the District Court of the United States for the Eastern District of New York against the steamboat company or against the steamboats of that company, except the Niagara, and from taking any action whatsoever under said libels and in proceedings looking to the condemnation and sale of the steamboats, or any of them, except the Niagara.

Plaintiffs in error appealed from that order to the general term, by which it was affirmed, and they then carried the case to the Court of Appeals of the State of New York, which affirmed the order of the general term, 136 N. Y. 169, and directed that its judgment be made the judgment of the Supreme Court, which was done December 6, 1892, whereupon this writ of error was sued out.

*Mr. Robert D. Benedict,* (with whom were *Mr. James Emerson Carpenter* and *Mr. Joseph F. Mosher* on the brief,) for plaintiffs in error.

*Mr. de L. Berier,* by leave of court, filed a brief on behalf of the Lehigh Valley Coal Company, and of the United States marshal for the district.

*Mr. James W. Eaton* for defendant in error.

By the order of July thirty-first, appointing a receiver, the New York state court acquired jurisdiction of the property of the corporation, and that jurisdiction is exclusive as against all other courts of coördinate jurisdiction.

This proposition is fully established by the decision of the Court of Appeals in this case; but, prior to that decision, the point was decided in favor of our contention, so far as the conflicting jurisdiction of courts of the same State was concerned, by the *Christian Jensen Case,* 128 N. Y. 550, which is directly in point. The proceeding was similar to the proceeding heretofore taken in the case at bar, and the case is conclusive upon

the proposition that the jurisdiction of the court appointing the receiver attaches from the moment of filing the order, and the process of other courts, levied intermediate the filing of the order appointing the receiver and the filing of his bond, is void. There are, indeed, a large number of cases holding that while it may be necessary for the receiver to file security in order to give him power to administer the assets of the corporation, the act of filing security is not at all essential to the jurisdiction of the court, and process levied intermediate the appointment of the receiver and his giving a bond is void. See *Maynard v. Bond,* 67 Missouri, 315 ; *Rutter v. Tallis,* 5 Sandf. (N. Y. Super. Ct.) 610 ; *Steele v. Sturges,* 5 Abb. Prac. 442 ; *Atlas Bank v. Nahant Bank,* 23 Pick. 480 ; *Wiswall v. Sampson,* 14 How. 52.

And this rule has been repeatedly applied to cases where such an exercise of jurisdiction on the part of the state court has been held to give it exclusive cognizance and control to the exclusion of a Federal court of coördinate jurisdiction attempting to interfere with the subject-matter in dispute ; and that, too, by the Federal courts themselves. See *Union Trust Co. v. Rockford &c. Railroad,* 6 Bissell, 197 ; *Wiswall v. Sampson,* 14 How. 52 ; *Holladay Case,* 29 Fed. Rep. 226 ; *Bruce v. Railroad Co.,* 19 Fed. Rep. 342 ; *Walker v. Flint,* 7 Fed. Rep. 435 ; *Kennedy v. Railroad Co.,* 3 Fed. Rep. 97 ; *The Red Wing,* 14 Fed. Rep. 869.

In *Judd v. Bankers' & Merchants' Tel. Co.,* 31 Fed. Rep. 182, an action in which the complainant, a creditor of an insolvent corporation, sought to have the Federal court take possession and distribute the assets of the corporation already in the hands of a receiver under the state court, it was said by Judge Wallace : " The case is one for the application of the rule that the court which first takes cognizance of the controversy is entitled to retain jurisdiction to the end of the litigation, and to take possession and control of the subject-matter of the investigation to the *exclusion* of all *interference* by other courts of coördinate jurisdiction. Citing *Taylor v. Carryl,* 20 How. 583 ; *Williams v. Benedict,* 8 How. 107 ; *Hagan v. Lucas,* 10 Pet. 400 ; *Buck v. Colbath,* 3 Wall. 334 ; *Heidritter v. Eliza-*

*beth Co.*, 112 U. S. 294; *Schuehle* v. *Reiman*, 86 N. Y. 270; *Union Trust Co.* v. *Rockford Railroad*, 6 Bissell, 197; *Sedgwick* v. *Menck*, 6 Blatchford, 156; *Young* v. *Montgomery &c. Railroad*, 2 Woods, 606. And see also the very recent case of *Porter* v. *Sabin*, 149 U. S. 473.

The case of *Heidritter* v. *Elizabeth Co.* is instructive in this connection. There property was seized by a United States officer for an infringement of Federal law. While thus in custody of the United States District Court it was seized under the state court to enforce a mechanic's lien. Both proceedings were *in rem.* The United States Supreme Court held that the Federal court had taken possession of the property and that the possession was necessarily exclusive. "The *res* was thereby drawn into the exclusive jurisdiction and dominion of the United States, and, for the purposes of that suit, it was at the same time withdrawn from the jurisdiction of the courts of New Jersey. Any proceeding against it involving the control and disposition of it in the latter, while in that condition, was as if it were a proceeding against property in another State. It was vain, nugatory and void, and, as against the proceedings and judgment of the District Court of the United States and those claiming under them, was without effect."

This doctrine was also asserted in the strongest terms by Judge Wallace in the recent case of *Central National Bank* v. *Hazard*, 49 Fed. Rep. 293. See also, *Attleborough Bank* v. *Northwestern Co.*, 28 Fed. Rep. 113.

In *Morrison* v. *Menhaden Co.* 37 Hun, 522, in which certain vessels had been seized by a marshal upon libels filed to enforce maritime demands, Daniels, J., says, that the custody of the property of the defendant prevented its seizure under the execution of the applicant. It was wholly within the jurisdiction and authority of the United States District Court and was not the subject of seizure and levy under his execution.

The principle is generally acknowledged that property in possession of an officer of a state court, under legal process is in the possession of that court, and, therefore, within its

exclusive jurisdiction; and the Federal courts, by replevin or any other process, cannot disturb such possession. *Senior* v. *Pierce*, 31 Fed. Rep. 625, cases cited; *Kressel* v. *The E. L. Cams*, 45 Fed. Rep. 367, cases cited; *Tefft* v. *Sternberg*, 40 Fed. Rep. 2.

It may be argued that these cases do not apply to the case at bar, because here the property was not taken into manual possession under process of the court. But that, under the authorities, is not necessary. The rule is stated in Gluck on Receivers, section 31, as follows : " The rule stated that the court which first takes cognizance of the controversy is entitled to retain jurisdiction to the end of the litigation, and incidentally to take the possession of or control the *res* . . . to the exclusion of all interference from other courts of coördinate jurisdiction, applies to state and Federal courts as well as to the several courts of a State. The proper application of this rule does not require that the court which first takes jurisdiction of the case shall also first take, by its officers, possession of the thing in controversy if tangible and susceptible of seizure ; for such a rule would only lead to unseemly haste on the part of officers to get the manual possession of the property. To avoid such a result, the broad rule is laid down that the court first invoked will not be interfered with by another court while the jurisdiction is retained."

Indeed, it will be found, upon examination, that all the cases which hold priority of manual possession as the test of jurisdiction between Federal and state courts are cases relating to the levy of a marshal on the one hand and the levy of a sheriff on the other, and do not apply to the case of a receiver. In those cases the liens are coördinate and equal, and the tribunal first acquiring actual possession, through its officers, gains complete control of the *res*. That is the only way that the court can gain control under its execution. The sheriff or marshal is not the hand of the court, as is the receiver, but only its officer to execute its mandate by seizing the property in behalf of an individual suitor. But, by the appointment of a receiver, the court in the exercise of its equity powers assumes the custody of the property to be dis-

posed of for the benefit of all concerned, and such an act is the assertion of its highest prerogative and does not require any actual seizure to make it effectual. That this distinction is clearly recognized is shown by a great number of cases which hold that even where the sheriff or marshal has made an actual seizure the subsequent appointment of a receiver, by the court, prevents any sale under the levy, because the order appointing the receiver vests the custody of the property immediately in the court, without the necessity of manual possession. *Union Trust Co.* v. *Rockford &c. Railroad Co.*, 6 Bissell, 197; *Matter of Berry*, 26 Barb. 55. The last mentioned case is particularly instructive in this connection. There a levy of property made by the sheriff before the appointment of the receiver, but after the making of an order directing his appointment, was held void. The court will take into account fractions of a day in determining priority of jurisdiction. *Matter of Berry, supra; People* v. *Central Bank*, 53 Barb. 412, 417.

If the rule were otherwise than has been above stated, the receiver of a corporation, the property of which was scattered over a large area, would be practically powerless and the object of his appointment absolutely frustrated. The learned counsel for plaintiffs in error, in his contention for the doctrine that manual possession is essential to establish jurisdiction, relies wholly on the cases relating to the conflicting claims of sheriffs and marshals which, as above pointed out, bears no analogy to the case of a receiver and a marshal. It is undoubtedly true that an execution in the hands of a sheriff binds personal property of a judgment debtor from the time that it is lodged in the sheriff's hands, but this doctrine is only true so far as subsequent purchasers are concerned, and has no application to the case where process is issued out of two coördinate courts, and the reasoning of the learned counsel as to the analogy between such process and the order appointing a receiver is therefore fallacious.

Apply this principle, above stated, to the case of courts of coördinate, but conflicting jurisdiction, and it follows that the court appointing the receiver has priority over the court

subsequently levying, through its officer, upon the property which, by the act of appointing the receiver, is in the custody of the first court. The question of what title, if any, is taken by the receiver to the property is immaterial. The real question is that of the custody of the court through its receiver and during the continuance of the receivership. The above rule applies to most of the cases where manual possession has been held to be important. *Hagan* v. *Lewis*, 10 Pet. 400; *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; *Covell* v. *Heyman*, 111 U. S. 176; *Heidritter* v. *Elizabeth &c. Co.*, 112 U. S. 294; *Pulliam* v. *Osborne*, 17 How. 471; *Adler* v. *Roth*, 5 Fed. Rep. 895; *Senior* v. *Pierce*, 31 Fed. Rep. 625; *The Sailor Prince*, 1 Ben. 237; *The Caroline*, 1 Lowell, 173; *Loving* v. *Marsh*, 2 Cliff. 311.

The only conclusion warranted by the authorities is that the New York Supreme Court, by the appointment of its receiver, gained complete and exclusive jurisdiction of the property and that the Federal court had no right to interfere.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

This court declined to issue the writ of prohibition to the District Court of the United States for the Eastern District of New York from proceeding upon these libels because the alleged want of jurisdiction in the District Court over the vessels was in course of litigation in that court on due process. *In re Fassett, Petitioner*, 142 U. S. 479, 484. The state court upon the receiver's application granted in effect the prohibition which we denied, and restrained libellants from prosecuting their libels. The question is whether it was within the power of the state court to do this?

The general rule is that state courts cannot enjoin proceedings in the courts of the United States, and this was held at a very early day, in reference to a judgment of the Circuit Court; *M'Kim* v. *Voorhies*, 7 Cranch, 279, 281; while on the other hand, it was determined that the Circuit Court would

not enjoin proceedings in a state court, and any attempt of that kind was forbidden by act of Congress. *Diggs* v. *Wolcott*, 4 Cranch, 179; Act of March 2, 1793, c. 22, § 5, 1 Stat. 333, 335. In *Riggs* v. *Johnson County*, 6 Wall. 166, 195, this court, speaking through Mr. Justice Clifford, said: "State courts are exempt from all interference by the Federal tribunals, but they are destitute of all power to restrain either the process or proceedings in the national courts. Circuit Courts and state courts act separably and independently of each other, and in their respective spheres of action, the process issued by the one is as far beyond the reach of the other, as if the line of division between them 'was traced by landmarks and monuments visible to the eye.' . . . Viewed in any light, therefore, it is obvious that the injunction of a state court is inoperative to control, or in any manner to affect the process or proceedings of a Circuit Court, not on account of any paramount jurisdiction in the latter courts, but because, in their sphere of action, Circuit Courts are wholly independent of state tribunals." And in *United States* v. *Keokuk*, 6 Wall. 514, 517, the same learned justice, again speaking for the court, observed: "Orders for an injunction issued by state courts are as inoperative upon the process of the Circuit Court of that district as they would be if directed to the process of a Circuit Court in any other district of the United States, because the state and Federal courts, in their sphere of action, are independent of any such control."

Mr. Justice Story was of opinion that to the doctrine which permits the courts of one State in proper cases to enjoin persons within their jurisdiction from instituting legal proceedings in other States, or from further proceeding in actions already begun, there exists the exception that the state courts cannot enjoin parties from proceeding in the courts of the United States, nor the latter enjoin them from proceeding in the former courts, an exception based upon peculiar grounds of municipal and constitutional law. Story Eq. § 900; Story Const. § 1757.

By the Judiciary Act of March 2, 1793, c. 22, § 5, 1 Stat. 334, the granting of injunction to stay proceedings in any

court of a State was prohibited in express terms, and it was held in *Peck* v. *Jenness*, 7 How. 612, 624, that even the District Court sitting in bankruptcy could not issue an injunction to stay a creditor of the bankrupt from proceeding in a state court, Mr. Justice Grier saying: "It is a doctrine of law too long established to require a citation of authorities that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice. In the case of *Kennedy* v. *The Earl of Cassilis*, 2 Swanston, 313, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the Court of Sessions of Scotland, which, on more mature reflection, he dissolved; because it was admitted, if the Court of Chancery could in that way restrain proceedings in an independent foreign tribunal, the Court of Sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court. The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."

The provision of the act of 1793 was carried forward into section 720 of the Revised Statutes, with the addition of the words "except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy," and

under that exception restraint by injunction was held authorized in *Chapman* v. *Brewer*, 114 U. S. 158.

In *French* v. *Hay*, 22 Wall. 250, a cause had been properly removed from a state court to the Circuit Court of the United States, under the removal acts, and the Circuit Court had vacated a decree previously rendered in the state court and dismissed the cause for want of equity, and it was held that the Circuit Court, having jurisdiction *in personam* over the parties, and having control over the cause, would not permit its jurisdiction to be trenched upon by any other tribunal, and might properly enjoin a party to the cause from proceeding beyond the territorial jurisdiction of the court in contravention of its decree. So, in *Dietzsch* v. *Huidekoper*, 103 U. S. 494, a plaintiff in a replevin suit brought in a state court had properly removed it to the Federal court and obtained a judgment there in his favor, but the state court proceeded to try the cause and render judgment against the plaintiff, notwithstanding the removal, and an action was then brought in the state court upon the replevin bond. It was held that the court of the United States might enjoin the prosecution of such action; the relief being merely ancillary to the jurisdiction already acquired and necessary to give effect to its own judgment.

And resort to injunction in proceedings in admiralty for the limitation of the liability of ship owners under an act of Congress, passed since the act of 1793, and expressly provided that after the institution of such proceedings " all claims and proceedings against the owner shall cease;" Act of March 3, 1851, c. 43, § 4; 9 Stat. 635; Rev. Stat. § 4285; was sustained in *Providence & New York Steamship Co.* v. *Hill Manufacturing Co.*, 109 U. S. 578, 599, 600.

These were all cases in which the issue of an injunction to a state court had been expressly or impliedly authorized by Congress as necessary to the effectual exercise by a court of the United States of its lawful jurisdiction over particular persons or things.

In *Gaylord* v. *Fort Wayne &c. Railroad*, 6 Bissell, 286, 291, 292, a bill was filed in the Circuit Court of the United States

for the District of Indiana, to obtain, among other things, the appointment of a receiver of the property of an insolvent corporation, and to administer it for the benefit of the creditors. After a demurrer to the bill had been sustained and an amendment made, a receiver was appointed. While proceedings were pending in the Federal court a suit was commenced in the state court of Indiana in which a receiver was also appointed, who took possession of the property. Subsequently the property was surrendered by the persons in possession under the receiver of the state court to the receiver of the Federal court upon his application, and he retained possession of the property, the court refusing to rescind the order appointing him. In disposing of the case, the Circuit Court, Drummond, J., said: "We think that there is no other safe rule to adopt, in our mixed system of state and Federal jurisprudence, than to hold that the court which first obtains jurisdiction of the controversy, and thereby of the *res*, is entitled to retain it until the litigation is settled. . . . Of course, in all that has been said, it is assumed, what was the fact in this case, that the bill was not only filed first in this court, but that the process was issued and duly served upon the parties, and that they were in court subject to its jurisdiction before any proceeding was instituted in the state court."

In *Home Insurance Co.* v. *Howell*, 24 N. J. Eq. (9 C. E. Green) 238, 241, the complainant filed its bill for relief against two policies of insurance, which it alleged the defendant had fraudulently obtained from it upon his property in Illinois, and prayed that the policies might be delivered up and cancelled or declared invalid, and that the defendant might be perpetually enjoined from bringing any suit at law or in equity upon them or making use of them in any way for the purpose of establishing any claim for damages against the complainant. Defendant appeared and filed an answer, to which a replication being filed, proofs were taken. After the suit was commenced, defendant brought an action at law on the policies against the company in a state court of Illinois, which suit was on its petition removed into the Circuit Court of the United States for the Northern District of that State.

The company thereupon filed its petition in the court of New Jersey for an injunction to restrain him from prosecuting his suit in Illinois, and an injunction having been issued, a motion was made to dissolve it. In denying the motion, the Chancellor said : " This court having the power to hear and determine the subject-matter in controversy, and having first obtained possession of the controversy, is fully at liberty to retain it until it shall have disposed of it. The general rule is, that as between courts of concurrent, and coördinate jurisdiction, (and the Circuit Court of the United States and the state courts are such in certain controversies — such as that involved in this suit, for example — between citizens of different States,) the court that first obtains possession of the controversy must be allowed to dispose of it, without interference from the coördinate court. . . . Where a party is within the jurisdiction of this court, so that on a bill properly filed here, this court has jurisdiction of his person, although the subject-matter of the suit may be situated elsewhere, it may by the ordinary process of injunction and attachment for contempt, compel him to desist from commencing a suit at law, either in this State or any foreign jurisdiction, and, of course, from prosecuting one commenced after the bringing of the suit in this court."

In *Brooks* v. *Delaplaine*, 1 Md. Chan. 351, 354, the high court of chancery of Maryland dismissed a bill in equity, because at the time it was filed a suit involving the same controversy was pending in the county court having concurrent jurisdiction. And see the observations of Mr. Justice Field, in *Sharon* v. *Terry*, 36 Fed. Rep. 337, 355.

We decided in *Cole* v. *Cunningham*, 133 U. S. 107, that a creditor, who is a citizen and resident of the same State as his debtor, against whom insolvent proceedings have been instituted in such State, is bound by the assignment of the debtor's property in such proceedings, and if he attempts to seize or attach the personal property of the debtor situated in another State, and embraced in the assignment, he may be restrained by injunction by the courts of the State in which he and the debtor reside. But we also held in *Reynolds* v. *Adden*,

136 U. S. 348, that a creditor who was not a citizen or resident of the same State with his debtor might proceed in another State against property there, unaffected by insolvency proceedings in the State of the debtor's residence, if in accordance with the law of such other State. The debtor in that case was a citizen and resident of Massachusetts, where the insolvency proceedings were had. The creditor was a citizen of New Hampshire, and he attached property of the debtor in Louisiana, where the rule was that the transfer of the estate of an insolvent debtor by judicial operation is not binding upon the citizens and inhabitants of Louisiana or any other State except the State in which the insolvent proceedings have taken place, at least until the assignee has reduced the property to possession or done what is equivalent thereto.

In *Worthington* v. *Lee,* 61 Maryland, 530, in a suit for specific performance of a covenant for the renewal of a lease and for an injunction to restrain an action of ejectment for the recovery of the premises, the Court of Appeals of Maryland held, Alvey, C. J., delivering the opinion of the court, that so far as the parties were within the jurisdiction of the court or bound by the decree, they might be restrained from taking any action at law in the courts of Maryland for the recovery of the property, but as to those parties residing in other States, they could not be restrained by injunction from the state court from suing in the Circuit Court of the United States, by which their right so to sue must be determined.

It will be perceived that the principle invoked in such cases as *Gaylord* v. *Railroad Company* and *Insurance Company* v. *Howell, supra,* is, that courts for the purpose of protecting their jurisdiction over persons and subject-matter may enjoin parties who are amenable to their process and subject to their jurisdiction from interference with them in respect of property in their possession or identical controversies therein pending, by subsequent proceedings as to the same parties and subject-matter in other courts of concurrent jurisdiction.

The proceeding in which upon petition the injunction under consideration was granted, was a proceeding in insolvency in the state court to dissolve and wind up the Schuyler Com-

pany on its own application, under the statutes of New York in that behalf, and if it be conceded that that court could protect its exercise of jurisdiction over that subject-matter by enjoining creditors from prosecuting suits against the company on petition of the receiver in that suit and without the bringing of a new suit for that purpose, it does not follow that it had power to grant the injunction in question.

If the state court could not restrain proceedings in the District Court of the United States; if the jurisdiction of the state court over the libellants had not attached; or if the District Court obtained jurisdiction over the vessels in priority to the state court, then this judgment must be reversed.

It is a rule of general application that where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court. This doctrine has been repeatedly affirmed by this court. *Hagan* v. *Lucas,* 10 Pet. 400; *Taylor* v. *Carryl,* 20 How. 583; *Peck* v. *Jenness,* 7 How. 612, 625; *Freeman* v. *Howe,* 24 How. 450; *Ellis* v. *Davis,* 109 U. S. 485, 498; *Krippendorf* v. *Hyde,* 110 U. S. 276; *Covell* v. *Heyman,* 111 U. S. 176; *Borer* v. *Chapman,* 119 U. S. 587, 600. These cases were cited in *Byers* v. *McAuley,* 149 U. S. 608, 614; and the language of Mr. Justice Matthews in *Covell* v. *Heyman* was quoted to this effect: "The point of the decision in *Freeman* v. *Howe, supra,* is that, when property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued, for the purposes of the writ; that the possession of the officer cannot be disturbed by process from any state court, because to disturb that possession would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer; that any person, not a party to the suit or judgment, whose property has been wrongfully, but under color of process, taken and withheld, may prosecute, by ancillary proceedings, in the court whence the process issued, his remedy for restitution of the property or its proceeds while remaining in the control of

that court; but that all other remedies to which he may be entitled, against officers or parties, not involving the withdrawal of the property or its proceeds from the custody of the officer and the jurisdiction of the court, he may pursue in any tribunal, state or Federal, having jurisdiction over the parties and the subject-matter. And *vice versa*, the same principle protects the possession of property while thus held, by process issuing from state courts, against any disturbance under process of the courts of the United States; excepting, of course, those cases wherein the latter exercise jurisdiction for the purpose of enforcing the supremacy of the Constitution and laws of the United States." *Porter* v. *Sabin*, 149 U. S. 473.

In *Buck* v. *Colbath*, 3 Wall. 334, 341, 345, the same rule was referred to as settled, and Mr. Justice Miller said: "A departure from this rule would lead to the utmost confusion, and to endless strife between courts of concurrent jurisdiction deriving their powers from the same source; but how much more disastrous would be the consequences of such a course, in the conflict of jurisdiction between courts whose powers are derived from entirely different sources, while their jurisdiction is concurrent as to the parties and the subject-matter of the suit. This principle, however, has its limitations; or rather its just definition is to be attended to. It is only while the property is in possession of the court, either actually or constructively, that the court is bound, or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. The effect to be given in such cases to the adjudication of the court first possessed of the property, depends upon principles familiar to the law; but no contest arises about the mere possession, and no conflict but such as may be decided without unseemly and discreditable collisions." It was further said: "It is not true that a court, having obtained jurisdiction of a subject-matter of a suit, and of parties before it, thereby excludes all other courts from the right to adjudicate upon other

matters having a very close connection with those before the first court, and, in some instances, requiring the decision of the same questions exactly. In examining into the exclusive character of the jurisdiction of such cases, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits." Hence it was held that an action of trespass might be sustained in the state court against the marshal for levying on property not belonging to the defendant in his writ, although his possession could not have been interfered with.

The reason was that his possession was the possession of the court, and, pending the litigation, no other court of merely concurrent jurisdiction could be permitted to disturb that possession, while the action of trespass constituted no such interference.

In this and like cases the question has arisen in respect of courts of concurrent jurisdiction as to parties and subject-matter.

But the question in the case at bar arises in respect of the state court and a District Court of the United States, whose cognizance of all civil causes of admiralty and maritime jurisdiction is, under the Constitution and by the ninth section of the Judiciary Act of 1789, (reproduced in Rev. Stat. § 711,) exclusive. *The Lexington*, [*New Jersey Nav. Co.* v. *Merchants' Bank,*] 6 How. 344, 390; *The Moses Taylor,* 4 Wall. 411; *The Hine,* 4 Wall. 555; *The Lottawanna,* 21 Wall. 558, 580; *Johnson* v. *Chicago &c. Elevator Co.,* 119 U. S. 388, 397; *The J. E. Rumbell,* 148 U. S. 1, 12. As said by Mr. Justice Miller: "It must be taken as the settled law of this court, that wherever the District Courts of the United States have original cognizance of admiralty causes, by virtue of the act of 1789, that cognizance is exclusive, and no other court, state or national, can exercise it, with the exception always of such concurrent remedy as is given by the common law." 4 Wall. 568. The act saves to suitors in all cases "the right of a common law remedy, where the common law is competent to give it;" that is, not a remedy in the common law courts, but a common law remedy. Suitors are not compelled to seek such

remedy, if it exist, nor can they, if entitled, be deprived of their right to proceed in a court of admiralty, and the state courts have no authority to hear and determine a suit *in rem* to enforce a maritime lien. *The Belfast*, 7 Wall. 624, 644; *The Josephine*, 39 N. Y. 19, 27.

A statutory proceeding to wind up a corporation is not a common law remedy, and a maritime lien cannot be enforced by any proceeding at common law. These libellants were entitled to have their causes tried in the court of admiralty, according to the rules and practice of admiralty, and that right could not be taken away from them, nor would the decree or judgment of the state court be pleadable in bar to their libels. If, then, the receiver had first taken actual possession of these vessels and sold them, such sale would not have cut off maritime liens and the right to have them enforced, and while it may be true that the state courts, exercising equitable jurisdiction, might undertake, in the distribution of property, to save the rights of holders of maritime liens, yet it is certain that those courts would have no power by a sale under statute to destroy their liens unless they had voluntarily submitted themselves to that jurisdiction.

In *Taylor* v. *Carryl*, 20 How. 583, 601, it was held that where a vessel had been seized under process of foreign attachment issuing from a state court in Pennsylvania, and a motion was pending in that court for an order of sale, process issued under a libel filed in the District Court of the United States for mariners' wages and supplies, could not divest the authorities of the State of their authority over the vessel; and of the two sales made, one by the sheriff and one by the marshal, the sale by the sheriff must be considered as conveying the legal title to the property, and the sale by the marshal as inoperative. And this because while the property levied upon was in the actual possession of one jurisdiction, it should not be taken by an officer acting under another. Mr. Chief Justice Taney and three of his associates dissented upon the ground that the question was not one " between the relative powers of a State and the United States, acting through their judicial tribunals, but merely upon the relative powers and

duties of a court of admiralty and a court of common law in
the case of an admitted maritime lien." The Chief Justice
stated that the following propositions were undisputed: "The
lien of seamen for their wages is prior and paramount to all
other claims on the vessel, and must be first paid. By the
Constitution and laws of the United States, the only court
that has jurisdiction over this lien, or is authorized to enforce
it, is the court of admiralty, and it is the duty of that court
to do so. The seamen, as a matter of right, are entitled to
the process of the court to enforce payment promptly, in
order that they may not be left penniless, and without the
means of support on shore. And the right to this remedy is
as well and firmly established as the right to the paramount
lien. No court of common law can enforce or displace this
lien. It has no jurisdiction over it, nor any right to obstruct
or interfere with the lien, or the remedy which is given to the
seaman. A general creditor of the ship owner has no lien on
the vessel. When she is attached (as in this case) by process
from a court of common law, nothing is taken, or can be
taken, but the interest of the owner remaining after the
maritime liens are satisfied. The seizure does not reach
them. The thing taken is not the whole interest in the ship.
And the only interest which this process can seize is a secon-
dary and subordinate interest, subject to the superior and
paramount claims for seaman's wages; and what will be the
amount of those claims, or whether anything would remain to
be attached, the court of common law cannot know until they
are heard and decided upon in the court of admiralty." Mr.
Justice Campbell, who delivered the opinion of the majority,
observed, at its close, that the view taken of the case rendered
it unnecessary " to consider any question relative to the respec-
tive liens of the attaching creditors, and of the seamen for
wages, or as to the effect of the sale of the property as
chargeable or as perishable upon them;" and he cited the
case of *The Oliver Jordan,* 2 Curtis, 414, in which Mr. Justice
Curtis held that property in the custody of the law of a State,
under an attachment, cannot be arrested by a warrant from a
District Court, sitting in the admiralty, in a proceeding to

enforce the lien of a material-man, but declined to then order the libel to be dismissed as "the state process may be so terminated as to render it practicable to proceed in the admiralty against the vessel."

As already pointed out, it was held in *Buck* v. *Colbath, supra,* that whenever the litigation in the court where the property is first seized has ended, or the possession of such court or its officers is discharged, then other courts are at liberty to deal with it according to the rights of the parties before them,- whether those rights require them to take possession of the property or not. This view is illustrated by many decisions in the District Courts, and was applied by Mr. Justice Blatchford, then district judge, in *The Sailor Prince,* 1 Ben. 234.

That was a case of a libel by seamen to recover wages against a ship and freight money, wherein the marshal made return to the process that he had not attached the vessel, but had attached the freight money in the hands of the parties who held it. Prior to the service of process, suit had been brought in the state court against the owners of the vessel, in which warrants of attachment had been issued, under which the sheriff had seized and was holding her when the marshal came to seize her. He had also served copies of the warrants on the parties who held the freight money, with notice that he attached it. But Judge Blatchford held that the seamen had a paramount lien for their wages upon the freight money, and that such lien was to be administered by the court of admiralty by the service of its process; that as against a lien of that character, the principle established in *Taylor* v. *Carryl* ought not to be extended; that the application of the principle of that case to an attachment issuing from a state court against a vessel only worked delay in the enforcement of a sailor's lien for wages upon her, but that the application of it to an attachment against freight money would work the entire destruction of the lien; that the possession of the freight money by the sheriff, constructive or otherwise, was not such as the possession of the vessel in *Taylor* v. *Carryl,* or such as prevented the marshal from levying his process

upon it, so as to give the District Court jurisdiction of it *in rem.* The learned judge considered the cases of *Taylor* v. *Carryl, Freeman* v. *Howe,* and *Buck* v. *Colbath;* and regarded the principle proceeded on in *Taylor* v. *Carryl,* at best, as a rule of comity; a relinquishment by a court of admiralty of its clear jurisdiction, "in favor of a state court, which cannot enforce or displace such lien, and has no jurisdiction over it, giving to the state court the right, for the time being, to obstruct and interfere with the lien and with the remedy of the seamen. That principle or rule of comity is, according to *Taylor* v. *Carryl,* to be sustained in regard to a vessel which has been seized by and is in the lawful custody of the sheriff under process from the state court, so long as it is in such custody, the Federal court being at liberty, when the litigation in the state court is ended, or when the possession of the sheriff is discharged, to take possession of the vessel and enforce against it admiralty liens. . . . Now, this rule of comity, thus regarded and limited and administered, may, perhaps, in ordinary cases, work no other mischief than to cause unnecessary and harsh delay in the enforcement of their rights by a class of men whose paramount and superior claims are recognized in the codes of law of all commercial countries. The state court can seize and sell only the interest of the owner in the vessel over and beyond the amount of the liens of the seamen, and can convey no absolute right of property in the whole vessel to a purchaser. Legally, the lien remains, to be enforced the moment the hand of the state officer is withdrawn from the vessel. And the vessel, in theory at least, remains *in specie,* so as to be subject to process for the enforcement of such lien." But that learned judge declined to extend that principle so far as to permit the state court to appropriate the money to the payment of inferior claims of creditors who had attached it by the process of the state court, as if this were done, "the lien of the seamen on such money for their wages is gone, extinguished, put out of existence, in the face of an admiralty court, by the act of a court of common law. The court of admiralty is to abnegate functions which are conferred upon it by the Constitu-

tion and laws, and to refuse to enforce a ·clearly admitted paramount admiralty lien, which no other court can enforce or directly destroy or supersede, because a state officer has, under process from a state court, attached a sum òf money which is the subject of such lien, and is to permit the state court to apply that money to the payment of an inferior claim not· founded on a lien, and thus indirectly destroy the lien practically and to all intents and purposes."

A similar question arose in *The Caroline*, 1 Lowell, 173, and it was held that it was not a good defence to a petition that freight might be brought into the admiralty court to answer the exigency of suits for mariners' wages and· materials, and that the consignee, before the libels were filed, was summoned as trustee or garnishee of the ship owner in a court of common law; that the courts of common law of Massachusetts had no power to adjust maritime liens upon a fund attached under the foreign attachment law of that State, and the consequence of giving .priority to such an attachment might be the destruction of the liens; that a court of common law would be bound to guard against this consequence by discharging the supposed trustee, or by waiting till the. liens were adjusted; and that the District Court might proceed to adjust the liens and might order the freight to be brought in for that purpose; and Lowell, J., said: "The decision in *Taylor* v. *Carryl*, as explained in *Freeman* v. *Howe*, and in *Buck* v. *Colbath*, does not operate to defeat the paramount maritime liens, but only to delay their enforcement, because the sheriff can sell only the right of the ship owner, subject to those liens; the practical effect of which I find to be that the sheriff usually waives his possession when libels are filed for maritime liens, because his title becomes of. little or no market value. So that we have come back pretty much to the practice which prevailed before the leading case was decided." The views of Judge Blatchford in respect of the attachment of credits, and thereby the destruction of maritime liens, were fully concurred in. And see *Clifton* v. *Foster*, 103 Mass. 233; *Eddy* v. *O'Hara*, 132 Mass. 56.

In *The E. L. Cain*, 45 Fed. Rep. 367, 370, the sheriff had

attached a tug and turned it over.to a receiver appointed by the state court. After that the marshal, under process upon libels filed for seamen's wages and supplies, seized the vessel, but the District Court held that the tug, "having been taken possession of by process of the state court, and by that court placed in the custody of the receiver, it could not be held by any process out of this court until discharged by order of the state court." And Simonton, J., said: "So, for the present, this court can proceed no further. But the liens set up in this court are maritime liens, which cannot be adjudicated or passed upon in the state court. Over these liens the jurisdiction of this court is exclusive. They will be protected in this court." The cause was continued until the state court had ordered a sale or in any other mode released its custody of the tug. To the same effect, Brown, J., in *The James Roy*, 59 Fed. Rep. 784.

In *The Elexena*, 53 Fed. Rep. 359, § 2186 of the Code of Virginia, providing that the sale of a vessel forfeited by proceedings in a state court for violating the oyster laws of the State "shall vest in the purchaser a clear and absolute title," was held by Hughes, J., inoperative to divest maritime liens of innocent parties attaching before the arrest of the vessel, and that the vessel might be subsequently seized in the hands of the purchaser and subjected to such liens by proceedings in the admiralty courts.

A maritime lien is not divested by a forfeiture for a breach of municipal law; *St. Jago de Cuba*, 9 Wheat. 409; nor by a sale to a *bona fide* purchaser without notice. *The Chusan*, 2 Story, 455; *The Bold Buccleugh*, 3 W. Rob. 220; *S. C.* 7 Moore P. C. 267. It is *jus in re;* and "it has been settled so long, that we know not its beginning, that a suit in the admiralty to enforce and execute a lien, is not an action against any particular person to compel him to do or forbear anything; but a claim against all mankind; a suit *in rem*, asserting the claim of the libellant to the thing, as against all the world." *The Young Mechanic*, 2 Curtis, 404, 412. See also *The Rock Island Bridge*, 6 Wall. 213; *The J. E. Rumbell*, 148 U. S. 1.

We think it entirely clear that, as a state court is without jurisdiction to enforce maritime liens, so it is incapable of displacing them, and, therefore, though under the rule laid down in *Taylor* v. *Carryl*, the possession by the state court of property subject to such liens will not be disturbed, yet that court can only deal with the property subject thereto; and when its jurisdiction has determined the admiralty courts may proceed.

But upon the facts disclosed in this record, was the District Court required to stay its hand until the termination of the proceedings in the state court? It is admitted that the receiver never took actual possession of the vessels, and that he did not qualify until after the marshal had taken such possession under the libels; but it is said that, as his appointment was made on July 31, before the libels were filed, when his bond was executed, approved, and filed in the office of the clerk of the court for Albany County, his title to the property related back to the time of his appointment, and that he had constructive possession as of that date, which constructive possession overreached the possession of the marshal.

Certain sections of the New York statutes (Rev. Stats. Part 3, c. 8, §§ 66, 67; Code Civ. Proc. 1891, App. 1167) provide that a receiver " before entering on the duties of his appointment shall give such security to the people of the State, and in such penalty as the court shall direct;" and "such receiver shall be vested with all the estate, real and personal, of such corporation from the time of his having filed the security hereinbefore required."

The contention is not only that the title to these vessels vested in the receiver as of July 31, and that, in such a case as this, constructive is the equivalent of actual possession, but that although the receiver did not qualify until after the seizure by the marshal, he thereupon became constructively possessed of the vessels as of July 31, and the jurisdiction of the District Court was thereby ousted. But if jurisdiction had attached, it would not be defeated even by the withdrawal of the property for the purposes of the state court, and, moreover, the doctrine of relation has no application. As between

two courts of concurrent and coördinate jurisdiction, having like jurisdiction over the subject-matter in controversy, the court which first obtains jurisdiction is entitled to retain it without interference, and cannot be deprived of its right to do so because it may not have first obtained physical possession of the property in dispute. But where the jurisdiction is not concurrent and the subject-matter in litigation in the one is not within the cognizance of the other, while actual or even constructive possession may, for the time being, and in order to avoid unseemly collision, prevent the one from disturbing such possession, yet where there is neither actual nor constructive possession there is no obstacle to proceeding, and action thus taken cannot be invalidated by relation. That doctrine is resorted to only for the advancement of justice, and, under these state statutes, is adopted to defeat fraudulent, unwarranted and unjust dispositions of the debtor's property, and to accomplish just and equitable ends. *Herring* v. *N. Y., Lake Erie &c. Railroad*, 105 N. Y. 340, 377.

At the time these libels were filed and the marshal seized the property, it had not been developed whether or when the receiver would or might give the security required and enter upon the discharge of his duties, and he had neither actual nor constructive possession.

The jurisdiction of the state court over the subject-matter of the winding up of the corporation and the distribution of its assets did not embrace the disposition of the claims of the libellants upon these vessels, nor were they as holders of maritime liens represented by the attorney general when he assented to the order of July 31, as mere creditors of that Schuyler Company were. The adjudication by that order may have so operated on the title in respect of the parties to that suit as to place the property constructively in the custody of the law as of that date, but not as to all persons and for all purposes. Under the circumstances we are unable to accept the conclusion that simply by the institution of the winding up proceeding, property, subject to liens over which that court could not exercise jurisdiction *in invitum*, was placed in such a situation in respect of liability to being ultimately

brought within the custody of the court that the District Court could not obtain jurisdiction for the purpose of ascertaining and enforcing those liens in respect of which its jurisdiction was exclusive. It appears to us that the District Court violated no rule of comity nor any other rule in entertaining the libels.

The title and the right of possession as between the receiver and the creditors of the Schuyler Company may have vested as of July 31, but this could not operate to divest a jurisdiction, not concurrent, to the exercise of which no actual impediment existed at the time it was invoked. As has been seen, maritime liens are incumbrances placed on vessels by operation of law, and neither the death nor the insolvency of the owner can divest or extinguish them or transfer jurisdiction over them to courts for the settlement of the estates of decedents or insolvents, although for the purposes merely of such settlement these are the appropriate tribunals. In the orderly administration of justice the representatives of such estates should apply to the court which alone has cognizance to ascertain and enforce these exceptional interests in the thing itself, which accompany it wherever it goes and into whosesoever hands it comes, and which cannot be displaced by the action of other courts *in invitum*.

The receiver accordingly properly applied to the state court for leave to contest the libels or to take such other proceedings therein as might be advisable, and was duly authorized so to do. Thereupon he made a motion in the District Court for an order directing the marshal to withdraw from the custody of the steamboats held under the admiralty process, which motion was denied on the ground that the question should be raised by answer to the libels. The receiver then appeared in one action against each vessel and filed his answer contesting the jurisdiction of the admiralty court. If the decision of that court had been adverse, he could have tested its correctness on appeal, but he seems to have been unwilling to abide the result, and to have entertained the view that while the proceedings in the District Court, to which he had become a party, were pending, he could go into

the state court and ask it to determine the question of jurisdiction by anticipation and by injunction prevent its decision by the tribunal to which it had authorized him to resort. Not only so, but he made an application to this court to prohibit the District Court from exercising jurisdiction. This was denied because the question involved was in due course of decision below, and the receiver thereafter obtained the injunction under consideration. Apart from the legal effect of this submission to the jurisdiction of the District Court, we cannot say that we are favorably impressed with this course of proceeding, and the less so since in the original application to the state court on July 31 it was averred that there was serious danger of the vessels "being libelled in the admiralty courts of the United States for such claims as constituted maritime liens, including the claims for services and supplies rendered to said vessels."

We are of opinion that the state court had no jurisdiction *in personam* over the libellants as holders of maritime liens when the libels were filed; that the question of jurisdiction was, as the case stood, one for the District Court to decide in the first instance; that the District Court had jurisdiction; and that the judgment under review was in effect an unlawful interference with proceedings in that court.

*The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE BREWER, with whom concurred MR. JUSTICE WHITE, dissenting.

While I agree with nearly all that is said in the opinion, I am unable to concur in the conclusions finally reached and the judgment ordered. I agree that "it is a rule of general application that where property is in the actual possession of one court of competent jurisdiction such possession cannot be disturbed by process out of another court;" and I may say that I agree further that when a court has possession of property it may restrain the bringing of any suit in any other court to disturb that possession, and that an order for

such restraint operates upon all persons within its jurisdiction, and can be enforced, if need be, by proceedings as for a contempt; but I disagree with my brethren as to the matter of possession. In the opinion of the court the possession of the officer is deemed the important matter. I submit that that is significant only as it bears upon the question of possession by the court. No one would pretend that the act of a marshal or a sheriff in taking possession of property would have any significance unless it were in the execution of some order of the court. If the proceeding is of itself such as to put the property into the possession of the court, that is enough, and there is no need of inquiry as to whether the officer of the court has in fact placed his hand upon it. Now, the statutory proceeding instituted by this insolvent corporation — a creature of the State of New York — involved a surrender of its property to the possession of the court. Such is the construction placed by its highest court upon the statutes of New York; and that construction, it seems to me, is binding upon this court. It is only in harmony with views that have been expressed by judges of the Federal courts. The bankrupt act of Congress authorized voluntary proceedings in bankruptcy, as do the statutes of New York authorize voluntary proceedings on the part of its corporations in insolvency. In *In re Vogel*, 7 Blatch. 18, 20, a question was presented as to the jurisdiction of the bankruptcy court as against that of a state court, whose officers in obedience to a writ of replevin had taken manual possession of the property before any officer of the former court had touched it, and the court held that from the time of the filing of the petition in bankruptcy the jurisdiction of that court over the property attached. I quote the language of District Judge Blatchford, whose opinion was sustained by Mr. Justice Nelson:

"It is manifest, from these provisions, that when a voluntary petitioner in bankruptcy files his petition in due form, he becomes, *eo instanti*, a bankrupt, so far as any interference with the property named in his inventory is concerned, and that such property is thereby brought into the bankruptcy court, and placed in its custody and under its protection, as

fully as if actually brought into the visible presence of the court. Being in the custody of the bankruptcy court, no other court, and no person acting under any process from any other court, can, without the permission of the bankruptcy court, interfere with it; and, to so interfere, is a contempt of the bankruptcy court."

Believing that the rule thus stated is the one to be applied in this case, I hold that, when the petition in insolvency was filed, the corporation, the owner and possessor of the property, surrendered it to the state court, and by no subsequent proceedings in any other court could that possession be disturbed.

I cannot agree that the respective jurisdiction of state and Federal courts is to be determined by a scramble between sheriff and marshal for possession.

For these reasons, while I concur in most of the reasoning of the opinion, I am constrained to dissent from the judgment.

I am authorized to say that Mr. Justice WHITE concurs in the foregoing views.