## Case No. 12,218.

### The SAILOR PRINCE.

[1 Ben. 234.] [1]

District Court, S. D. New York. June 13, 1867.

ADMIRALTY — JURISDICTION — SEAMEN'S WAGES — STATE ATTACHMENT—LIEN ON FREIGHT MONEY FOR WAGES.

1. A libel was filed by seamen to recover wages against a ship and freight money. The marshal made return to the process, that he

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

had not attached the vessel, but had attached the freight money in the hands of parties who held it. Prior to the service of the process, suit had been commenced in a state court against the owners of the vessel, in which warrants of attachment had been issued, under which the state sheriff had seized the vessel. He held her under those attachments when the marshal came to seize her. He had also served copies of the warrants upon the parties who held the freight money, with notice that he attached it. On this state of facts, the parties submitted to this court the question, whether there had been a valid attachment of the freight by the marshal, so as to give this court jurisdiction to hear and determine the libel. *Held*, that seamen have a paramount lien' for their wages upon the freight money of the voyage, and that such lien is to be administered by a court of admiralty by the service of its attachment upon the freight money, in the hands of the parties where it is found.

[Cited in The Olivia A. Carrigan, 7 Fed. 510, 511; Moran v. Sturges, 154 U. S. 267, 14 Sup. Ct. 1026.]

2. As against a lien of this character, the principle established by the supreme court of the United States, in the case of Taylor v. Carryl, 20 How. [61 U. S.] 483, ought not to be extended.

[Cited in The Caroline, Case No. 2,419.]

3. The application of the principle of that case to an attachment issuing from a state court against a vessel, would only work delay in the enforcement of a sailor's lien for wages upon her, but the application of it to an attachment against freight money would work the entire destruction of the lien.

[Cited in The Caroline, Case No. 2,419; The Vigilancia, 63 Fed. 734.]

4. The possession of the freight money by the sheriff, constructive or otherwise was not such as the possession of the vessel in Taylor v. Carryl, or such as prevented the marshal from levying his process upon it, so as to give this court jurisdiction of it in rem. The jurisdiction of this court is therefore sustained.

The libel in this case was filed by John P. Murray, and fourteen other seamen, against the British ship Sailor Prince, and the freight money earned by her on a voyage from Manilla to New York, to recover their wages. The amount claimed to be due for the wages was about $5,000, and was for the service of the seamen on board of the vessel, on the voyage on which the freight money was earned. On the filing of the libel a monition was issued, March 1st, 1867, against the vessel and the freight money. The marshal made return to that monition that he had not attached the vessel, but had served a copy of the monition personally on Kirkland & Von Sachs, and had attached $7,100 in gold, freight money. To a subsequent alias monition issued against the vessel alone, the marshal made a return of "not found." Prior to the service of the monition by the marshal on Kirkland & Von Sachs, the claimants, Charles Lanier and J. G. Richardson, had severally commenced actions in the supreme court of the state of New York, against the Barned's Banking Company, Limited, an English corporation, in which actions, warrants of attachment had been issued to the sheriff of the city and county of New York, and service thereof made by him by attaching the vessel, which was still in his hands under the attachment, and by serving upon Kirkland & Von Sachs copies of the warrants of attachment, with notices that the freight money due the vessel was attached as the property of the Barned's Banking Company, Limited, in accordance with the provisions of the Code of New York in that behalf. After the service of the monition on Kirkland & Von Sachs, the freight money, by the consent of all the parties and for the greater security of the fund, and that it might be earning interest, was paid over by Kirkland & Von Sachs to Messrs. Evarts, Southmayd & Choate, attorneys for the master and the consignees of the vessel, upon the agreement that the rights of all the parties to the suit, in and to the fund, should remain unimpaired and in all respects the same as if the money had remained in the hands of Kirkland & Van Sachs, the fund to be invested in government securities. After the freight money was so paid to Messrs. Evarts, Southmayd & Choate, the warrants of attachment were served on them by the sheriff, and afterward the monition in this suit was served on them by the marshal. The actions in the state court were still pending. The foregoing facts were agreed upon by the counsel for the respective parties, or appeared in the papers on file in the case, and a stipulation was entered into, submitting to the court the question whether there had been a valid attachment of the freight moneys by the marshal, so as to give this court jurisdiction to hear and determine the libel. If the court should be of opinion that there had been, the several claimants were to have such time to answer to the merits as the court should order.

W. G. Choate, for libellants.
G. De F. Lord, for claimant.

BLATCHFORD, District Judge. The lien of a seaman for his wages is, in the admiralty, prior and paramount to all other claims on the subject of the lien, and is to be first paid out of it or its proceeds. The freight money earned by the vessel on the voyage on which the seaman served is subject to such paramount lien, and is the natural fund out of which the wages are to be paid; and this lien is to be administered by the court of admiralty by the service of its attachment upon the freight money in the hands of the parties where such money is found. Drinkwater v. The Spartan [Case No. 4,085]; Sheppard v. Taylor, 5 Pet. [30 U. S.] 675, 711. The paramount lien, then, in this case being clear, and the court having taken the usual means to enforce that lien, and the marshal having returned that he has attached the freight money, it would seem that there could be no legal impediment to the exercise of its jurisdiction.

But it is urged by the claimants that this court cannot, in view of the decision made by the supreme court of the United States, in

the case of Taylor v. Carryl, 20 How. [61 U. S.] 583, assume jurisdiction of this case, or draw to itself the power, now and in this suit, of applying this freight money to the payment of the wages of these seamen. If I regarded that case as necessarily covering in its decision the principle involved in the present case, I should of course feel myself bound to follow it. But as I do not so regard it, I proceed to state my reasons for holding that, notwithstanding that case, the court has jurisdiction of the present case. The case of Taylor v. Carryl was decided by five judges against four, after three arguments of it before the court. That case was one where a vessel, while under seizure by a sheriff under process from a state court, was libelled in the admiralty by seamen on board of her for their wages. The decision of the supreme court in that case, as explained by Mr. Justice Nelson, in delivering the unanimous opinion of the same court in Freeman v. Howe, 24 How. [65 U. S.] 450, was, that the vessel seized by the sheriff under the process from the state court, and while in the custody of that officer, could not be seized or taken from him by the process of the district court of the United States. Again he says (page 455), that the majority of the court were of opinion that the question as to whether the state or the federal authority should for the time prevail, depended on the question which jurisdiction had first attached, by the seizure and custody of the property under its process. Subsequently, in Buck v. Colbath, 3 Wall. [70 U. S.] 334, 342, Mr. Justice Miller, in delivering the unanimous opinion of the supreme court in that case, says that the principle of the case of Taylor v. Carryl [supra] was, that as between the two courts, where the property had been seized by an officer of the one court, by virtue of its process, such possession could not for the time being be interfered with by the other court. And Mr. Justice Miller in that case (page 342) goes on to say, that whenever the litigation in the court where the property has first been seized is ended, or the possession of such court or its officer is discharged, then other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not.

Now, in my view, the principle decided in the case of Taylor v. Carryl ought not to be extended as against a lien of the character of that sought to be enforced by the libellants in this case. It is at best a rule of comity. It is a relinquishment by a court of admiralty—the only court which, under the constitution and laws of the United States, has jurisdiction over the lien of seamen for their wages, or is authorized to enforce such lien—of its clear jurisdiction, in favor of a state court, which cannot enforce or displace such lien, and has no jurisdiction over it, giving to the state court the right, for the time being, to obstruct and interfere with

the lien and with the remedy of the seamen. That principle or rule of comity is, according to Taylor v. Carryl, to be sustained, in regard to a vessel which has been seized by and is in the lawful custody of the sheriff under process from the state court, so long as it is in such custody, the federal court being at liberty, when the litigation in the state court is ended, or when the possession of the sheriff is discharged, to take possession of the vessel and enforce against it admiralty liens. The lien of a seaman against the vessel for his wages will remain unaffected by any action of the state court in regard to the vessel. If the state court, in the suit in which it issued the process on which the vessel was seized and is held in custody, sells the vessel, the purchaser will take his title to her subject to the lien of the seaman for his wages, and the moment she passes out of the custody of the sheriff, the seaman can enforce his lien, by serving process on her in a libel in the admiralty. Now, this rule of comity, thus regarded and limited and administered, may, perhaps, in ordinary cases, work no other mischief than to cause unnecessary and harsh delay in the enforcement of their rights by a class of men whose paramount and superior claims are recognized in the codes of law of all commercial countries. The state court can seize and sell only the interest of the owner in the vessel over and beyond the amount of the liens of the seamen, and can convey no absolute right of property in the whole vessel to a purchaser. Legally, the lien remains, to be enforced the moment the hand of the state officer is withdrawn from the vessel. And the vessel, in theory at least, remains in specie, so as to be subjected to process for the enforcement of such lien. But, if the principle be extended so far as to permit the state court, as against the lien of the seamen in this case on the freight money of this vessel for their wages, to appropriate that money to the payment of the inferior claims of the creditors who have attached it by the process of the state court, the lien of the seamen on such money for their wages is gone, extinguished, put out of existence, in the face of an admiralty court, by the act of a court of common law. The court of admiralty is to abnegate functions which are conferred upon it by the constitution and laws, and to refuse to enforce a clearly admitted paramount admiralty lien, which no other court can enforce or directly destroy or supersede, because a state officer has, under process from a state court, attached a sum of money which is the subject of such lien, and is to permit the state court to apply that money to the payment of an inferior claim not founded on a lien, and thus indirectly destroy the lien practically and to all intents and purposes. I cannot believe that any such doctrine flows from the decision in Taylor v. Carryl, or will be sustained by the

supreme court of the United States. So believing, I sustain the jurisdiction of this court in this case.

In speaking of process of the state court I refer solely to lawful process. When the question arises as to a state process which is void, it will remain to be disposed of upon considerations which may be peculiar to such a case.

I have preferred to maintain the jurisdiction of this court upon the point on which I have placed it in regard to the distinction between this case and that of Taylor v. Carryl, as being a broad and not a technical ground, and one comporting with the high prerogatives of a court of admiralty. I therefore do not enlarge upon another point of distinction which might, perhaps, be taken between the two cases, founded upon the fact that the sheriff in this case is not in possession of the freight money and does not appear ever to have been in possession of it, although he served his warrants of attachment upon the parties who held it, with a notice that it was attached as the property of the defendant in the warrants. The manner of attaching the money by the sheriff was, indeed, so far as the question of actual possession of the money is concerned, of as high a character as the manner of attaching it by the marshal in this case. Yet it by no means necessarily follows that the possession of the money by the sheriff, of whatever character it may be, constructive or otherwise, either absolutely under the state law of New York, or relatively when compared with the character of the possession of the money by the marshal in this case, is such a possession as was the actual possession of the vessel by the state sheriff in Taylor v. Carryl, or such a possession as requires this court, under a rule of comity, to refrain from interfering with it, or prevents the marshal from levying his process upon it so as to give this court jurisdiction of it in rem.

The view I have taken of this case proceeds upon the ground that the sheriff claims by his process to have attached the whole freight money. If he claims to have attached only the interest of the defendant in his attachments in what remains of the money over and above the amount of the paramount and prior maritime liens upon it, then, of course, there can be no difficulty about the jurisdiction of this court, or about the attachment by the marshal, and the way is clear, even within the broadest application of the case of Taylor v. Carryl, for this court to ascertain the amount due to the seamen for their wages and pay it out of the freight money, leaving to the sheriff, under his attachments, just what he in fact attached, namely, the residuum beyond the amount of the paramount maritime liens.

An order will be entered in conformity with this decision and giving the claimants one week to answer the libel.

