# THE OLIVIA A. CARRIGAN.

*(District Court, S. D. New York. February 17, 1881.)*

1. ATTACHMENT BY STATE COURT — GARNISHEE — CONFLICT OF JURIS-
DICTION—MARSHALLING ASSETS — SEAMEN — MORTGAGEE—ATTACH-
ING CREDITORS—SUCCESSIVE GARNISHMENTS UNDER PROCESS FROM
COURTS OF DIFFERENT JURISDICTIONS.

Service of monition by the United States marshal for seamen's
wages, upon parties owing freight moneys, does not place the fund
beyond the reach of an attachment subsequently issued from the
state court to the sheriff of the county, in an action brought by an-
other against the owner of the vessel.

The fund is not taken into actual custody by the officers of the
United States court, as in the case of *Taylor* v. *Carryl*, 20 How. 583. The
relation of debtor and creditor still exists between the garnishee and
the defendant, and does not interfere with a second garnishment,
whereby the fund will be bound, subject to be defeated if the fund is
called in under the first garnishment by the judgment of this court.

In such a case there is no danger of conflict of jurisdictions, nor of
any interference by one officer with the possession acquired by
another.

Case of *The Lottawanna*, 20 Wall. 201, distinguished.

Where, in a suit for seamen's wages, this court ordered the decree
therefor to be satisfied out of the proceeds of the vessel and freight,
and a mortgagee claiming a lien on the vessel by virtue of his mort-
gage petitioned to have the sailors paid out of the freight in order
to protect his claim, and a creditor of the owner of the vessel, having
a subsequent lien on the freight by attachment issuing out of the
state court against the owner, asked to have the seamen first paid out
of the ship in order to protect his lien,—

On motion to dismiss the petition of the latter, the question of the
respective rights of the parties being also submitted:

*Held*, that the attaching creditor, having parted with no value for
his lien on the freight which attached after that of the mortgagee on
the vessel, had no greater equity against the mortgagee to have the
assets marshalled in his favor than the debtor himself would have
had at the time his attachment was laid. Therefore, the mortgagee
had the better equity to have the assets marshalled, and will be en-
titled, on proving his mortgage, to have the seamen first paid out of
the freight so far as that will go, the whole fund being insufficient to
pay his claim and that of the seamen.

In Admiralty.

*F. A. Wilcox*, for mortgagee.

*H. Putnam*, for attaching creditor.

CHOATE, D. J. The brig Olivia A. Carrigan, belonging to Halifax, Nova Scotia, together with the freight moneys due on her voyage to this port, were attached in a suit in this court for seamen's wages, brought by the libellants, McNamara and others. After the service of the monition by the marshal on the parties owing the freight moneys, the sheriff of the county of New York served on them a warrant of attachment against the same freight moneys in their hands, issued out of the supreme court of New York at the suit of the petitioner Bertaux against the owner of the vessel. The vessel was condemned and sold under the decree of this court, and another libel was filed for supplies and materials. In the seamen's suit a decree was entered condemning the vessel and her freight for payment of the seamen's wages, and a final decree directed the payment of the freight to the satisfaction of the claim of the seamen, and that any balance due to the seamen, not paid by application of the freight, be paid out of the proceeds of the vessel. Before the execution of this decree in respect to the freight moneys, and before the freight had been paid into court, the petitioner Bertaux applied to the court for a modification of the decree so that the wages should be paid out of the proceeds of the vessel, leaving the freight moneys to satisfy his judgment, if he should recover judgment in his suit in the state court. This motion was opposed by the petitioner Dimock, who had filed his petition claiming the remnants and proceeds of the vessel under a mortgage from one Doyle, who was claimed to be the owner of the brig at the date of his mortgage, and by Doyle, who claimed the surplus, if any, as owner at the time of the sale of the vessel. Bertaux's application was by motion, on an affidavit; and, without determining whether he obtained any lien on the freight moneys by his attachment subsequent to that of the marshal, it was held that the proper mode of presenting his claim, if any he had, was by petition, and not by motion, and it was ordered that he have leave to file a petition, and in the meanwhile it was directed that the freight moneys be paid into the registry, and that the decree in favor

of the seamen be satisfied out of the proceeds of the vessel and the freight, leaving the question of the proper marshal-ling of the assets as between the two funds to be determined when all the parties were properly before the court, and proof should have been taken under the several petitions filed or to be filed. Bertaux has now come in by petition, and by a supplemental petition it appears that he has recovered a judgment for $288.24. The amount of the freight moneys in the registry is $653; the proceeds of the vessel remaining in the registry, after satisfying the decree in favor of the seamen and all other decrees for maritime liens, is $597.18. The mortgage of the petitioner Dimock is dated April 26, 1880, and there is alleged to be due upon it $2,000. Ber-taux's attachment was made May 18, 1880. And now a motion is made to dismiss his petition on the ground that he cannot have acquired any lien on the freight money by his attachment which this court can recognize, because the pre-vious attachment by the marshal withdrew the debt entirely from the jurisdiction of the state court, and on the ground that his claim upon the freight money, if any, is not of a character to be enforced in this court against a surplus in the registry. The parties have also argued and submitted the question whether the lien of the mortgage or that of the attaching creditor, if they both have liens, should be held to give the better right to have the assets, the proceeds of the vessel and the freight moneys, marshalled for his benefit.

The first question is whether the attachment of the debt by the marshal so brought the sum due into the possession or control of the officers of this court that the subsequent service of the garnishee process out of the state court must be considered wholly inoperative; or, in other words, whether there can be two garnishments of the same fund or debt by courts of different jurisdictions, having different executive officers. It is insisted that by the first attachment the fund is, in contemplation of law, so absolutely in the possession and under the control of the marshal that the sheriff cannot obtain any such possession or control as will sustain the sec-

ond attachment. The case of *Taylor* v. *Carryl*, 20 How. 583, is relied on as controlling this case. That case, of course, is conclusive that the actual possession of chattels by the executive officer of one jurisdiction, under his process, is so absolute as to exclude any concurrent possession under process by the executive officer of a court of another jurisdiction; but I think the cases are not analogous, and that the principle of that decision does not apply to successive garnishments. The officer does not take possession of the fund upon service of the process, such as was had in this case. The relation of debtor and creditor still continues between the garnishee and the principal defendant. That relation is liable to be discharged by the judgment of the court applying the fund or debt to the satisfaction of the plaintiff's demand. For this purpose the fund or debt is wholly under the control of the court making the first attachment, and no subsequent attachment can interfere with such application of the fund, if found to be needed for that purpose; and, in this case, this court, by service of the process, acquired the undoubted right to direct the fund to be paid into court. Its jurisdiction in a suit for seamen's wages is not affected even by a prior garnishment, (*The Sailor Prince*, 1 Ben. 234;) and while the attachment under the process of this court was, in some respects, and especially in its effect, something more than a garnishment, yet it is like a garnisnment in this: that the fund is not, by the service of the process, actually taken into custody. But a debt garnished may never be called in. The proceeding may not result in a judgment against the principal defendant, or, if it does, the judgment may be otherwise satisfied. It seems to me, therefore, that there is no difficulty in a seccond garnishment whereby the fund will be bound; subject, of course, to be defeated, if the fund is called in under the first garnishment. There is not here any danger of a conflict for possession between courts and officers of two jurisdictions, nor any interference by one officer with the possession acquired by the other under his process, which is the controlling reason on which the rule enforced in *Taylor* v. *Carryl*

is based. In the case of *Woodruff* v. *Trench*, 6 La. Ann. successive garnishments of the same debt under process from courts of two different states were recognized as valid, and some suggestions were made as to the proper mode of protecting the garnishee against being obliged to pay the debt twice in such a case. Mr. Drake, in his work on Attachments, seems to approve of this decision, while he recognizes in its full force the rule laid down in *Taylor* v. *Carryl*. Drake on Attachments, (5th Ed.) §§ 223, 251, 455.

The case of *The Lottawanna*, 20 Wall. 201, is cited for the proposition that this court cannot recognize or enforce, in the distribution of proceeds, the rights of a garnishee under state process. In that case an attempt was made to garnishee funds in the registry of the court. That, of course, was impossible, the fund being most clearly *in custodia legis*, and beyond the reach of attachment. It was also held that the court has no power to distribute surplus and remnants among the creditors of the owner, even his judgment creditors, against his objection. It affords no authority for the proposition that a lien or legal claim of any kind whatsoever upon the fund, attaching thereto before it comes into the possession of the court, will not be recognized and enforced as against the owner after the satisfaction of those maritime claims which are first entitled to be paid. The remaining question is, which of these parties has the better right to have the fund marshalled for his benefit? Courts of admiralty will, in proper cases, apply the equitable rule, that where one creditor has two funds to resort to and another has but one, the creditor having two will be compelled to look to that fund to which the other has no recourse. This has been applied in case of seamen who have an equal claim on ship and freight, and to whom it is a matter of indifference out of which they are paid. *The Sailor Prince*, 1 Ben. 234, 461; and see *In re Bank of Nova Scotia*, 4 Fed. Rep. 667. In this case the mortgagee insists that the sailors be paid out of the freight, to protect his claim against the vessel. On the other hand, the attaching creditor insists that they be

paid out of the ship, to protect his lien upon the freight. In the case last cited, where a mortgagee of the vessel contested a similar question with a party who had a lien on the freight by way of security for advances, it was held that their equities were equal, and it was directed that the seamen be paid *pro rata* out of the vessel and the freight, thus giving an equal protection to their equal equities. In that case, however, each of the parties had an equity based upon what was in fact value paid for his interest or lien at the time of acquiring it. In the present case, however, the attaching creditor has parted with no value for his interest or lien upon the freight. He got, by the law of the state, a lien on the interest of the owner in the freight due. He acquired it, as it seems to me, subject to an equity then existing as between the mortgagee of the vessel and the owner, which the owner could not then have resisted, to have the fund marshalled for the benefit of the mortgagee. The lien of the mortgage had already attached to the vessel, and the lien for wages to the vessel and freight, and the fund had become insufficient to pay both in full. Under these circumstances, the attaching creditor who takes only the interest of his debtor at the time of the attachment, not by purchase or for value, but merely by operation of law, has no greater equity against the mortgagee than his debtor himself had. Therefore, if the mortgagee shall show the mortgage to be valid, he will be entitled to have the seamen paid out of the freight so far as it will go, notwithstanding the attachment. The freight money was paid in without prejudice to the rights of either party, and the seamen's wages were also paid without prejudice to any ultimate order which it may be just and equitable to make; but, as proof has not been taken under either petition, an order of reference for that purpose must be made.

Motion to dismiss petition denied. Petitions referred to take proof of facts, etc.