JOHN CROSBY BROWN and Others, Respondents, v. JAMES GRAY, JOHN STEPHENS and HENRY MAWSON, Appellants, Impleaded with THE UNITED STATES AND BRAZIL MAIL STEAMSHIP COMPANY and THE ATLANTIC TRUST COMPANY.

*Maritime liens — jurisdiction of equitable actions relating to*

The State courts have not jurisdiction of an equitable action, brought to enforce a maritime lien, which seeks an adjudication as to the existence of a maritime lien and, if found to exist, a determination of its amount, such an action is within the exclusive jurisdiction conferred upon the United States courts in maritime causes.

APPEALS by the defendant James Gray, as owner of the steamship *Kate*, and by the defendants John Stevens and Henry Mawson, as owners of the steamship *Joshua Nicholson*, from orders of the Supreme Court, made at the New York Special Term at Cham-

bers, and entered in the office of the clerk of the city and county of New York on the 30th day of March, 1893, and the 6th day of April, 1893, respectively, directing the appellants to deposit with the Central Trust Company of New York, all moneys collected by them on account of freight, less certain charges for wharfage, lighterage and port charges upon their respective vessels.

The United States and Brazil Steamship Company is a corporation organized under the laws of this State, and when the transactions occurred out of which this litigation arises, it was a common carrier of freight and passengers between the port of New York and various ports in South America. Among other steamers used in their business were the *Kate* and *Joshua Nicholson*, both British vessels. The *Kate* was owned by the defendant James Gray, and on the 15th of December, 1892, was hired to the corporation for two round trips from ports in the United States north of Cape Hatteras to ports in Brazil or in the Argentine Republic.

The *Joshua Nicholson* was owned by the defendants Stephens and Mawson, and on the 16th of December, 1892, was hired to the corporation for two round trips from the port of New York to ports in Brazil or in the Argentine Republic. Each vessel made one round trip from the port of New York and about the time of the termination of their trips the corporation became insolvent and a receiver of it was appointed.

The owners of the vessels agreed to furnish sufficient officers, seamen and employees to navigate the steamers. The charterers agreed to pay a sum specified for each calendar month for the time which the steamers were employed. Both charter parties contained a provision that the owners should have a lien on all cargoes of freight for the amount due them on the contract. In 1892 and 1893, the plaintiffs issued to the corporation certain letters of credit under which the steamship company became indebted to the plaintiffs in large sums of money. When the letters were issued it was agreed that all freight moneys earned and to be earned by the corporation were "pledged and hypothecated to the plaintiffs as collateral security for the payment" of all moneys advanced under the letters of credit. This action was brought originally against the corporation, as the sole defendant, for the purpose of having the sums advanced by the plaintiffs under their letters, charged as a lien on

the freight moneys earned and to be earned and to restrain the corporation from collecting these moneys. A temporary injunction was granted restraining the corporation from collecting the money due for freight.

The Atlantic Trust Company is a trustee for holders of bonds secured by a mortgage, executed by the corporation July 1, 1889, upon its property as security for the bonds issued pursuant to the mortgage. The trust company claimed to have a lien upon the freight moneys and March 15, 1893, it was, by an order of the court, on its own petition, brought in as a party defendant in the action. On the same date an order was made that the steamship company deposit with the Central Trust Company to the credit of this action all freight moneys then in its possession and all which should thereafter be earned.

. March 22, 1893, upon the motion of the plaintiffs, James Gray, the owner of the *Kate*, and John Stephens and Henry Mawson, the owners of the *Joshua Nicholson*, were ordered to be brought in as parties defendant. Pursuant to this order the summons and complaint were amended and these persons named as defendants in the action. By the amended complaint, it is alleged that James Gray was the owner of the *Kate*, and that Stephens and Mawson were the owners of the *Joshua Nicholson*, and chartered them to the steamship company. It is also alleged that said owners have or claim to have some interest in the freight moneys earned by those vessels " on the voyages of said steamers now last terminated or about to be terminated, by reason of certain unpaid charter hire due or owing to them upon said steamers, and certain moneys advanced by them for disbursements of said steamers."

It is also alleged that the owners through their agents in the city of New York are collecting the freight moneys and threaten to apply it to their own use, and have refused to deliver it to the plaintiffs, though requested so to do.

The sums which the steamship company agreed to pay for the use of the vessels have not been paid and the owners were compelled to pay certain sums for port charges. The owners, through their agents in the city of New York, have collected the freight moneys due at the port of New York and claim to hold them as security for the amount due under the charters, for disbursements in delivering

the cargo, for a claim made for coal and for damages for refusing to load the vessels for the second agreed voyages.

The appellants have not been served with process, nor have they appeared in the action except specially for the purpose of moving to vacate the injunction and for the purpose of this appeal.

*J. Parker Kirlin,* for the appellants.

*Williard Parker Butler,* for the respondents.

FOLLETT, J. :

Under the charter parties the owners of the vessels had liens on the freight moneys for the sums due them for the use of their ships. (*Bags of Linseed,* 1 Black, 108 ; *The Bird of Paradise,* 5 Wall. 545.) By the terms of the charter parties the vessels were to be navigated by officers and crews furnished by the owners and at their expense and at the time when the owners enforced their liens upon the freight, they had legal possession of the ships.

In *Clarkson* v. *Edes* (4 Cow. 470), it was held, that when by the terms of a charter party a vessel is to be navigated at the expense of the owners, they must be deemed to be the owners in possession.

Whether the owners have a lien on the freight moneys for all the items which they claim is not necessary to be determined, for we are of the opinion that this court has not jurisdiction to adjudicate upon the conflicting claims of these litigants.

Section 2 of article 3 of the Constitution of the United States provides that the judicial power of the courts of the United States shall extend to all cases of admiralty and maritime jurisdiction. Pursuant to this provision section 711 of the Revised Statutes of the United States was passed, which provides : "The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states.    *    *    *

"*Third.* Of all civil causes of admiralty and maritime jurisdiction ; saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it."

The same statutory provision is contained in subdivision 8 of section 563 of the Revised Statutes of the United States.

Under this statute it has been repeatedly held that controversies

arising out of maritime contracts must be enforced in the United States courts, unless the remedy sought is one which can be obtained in a common-law court. (*The Hine* v. *Trevor,* 4 Wall. 555; *The Belfast,* 7 id. 625; *Town of Pelham* v. *The Schooner B. F. Woolsey,* 3 Fed. Rep. 457.)

The learned counsel for the respondent cites many cases and many more might be added, holding that actions for the recovery of damages — common-law actions — for breach of maritime contracts may be maintained in the courts of the several States, but he cites no authority holding that an equitable action brought to enforce a maritime lien can be prosecuted in such courts. Of such actions the Federal courts have exclusive jurisdiction.

The case at bar is an equitable action brought in the first instance to enforce a maritime lien in favor of the plaintiff, and by the amendment to the complaint it is sought to adjudicate as to the existence of the maritime liens claimed by the appellants, and if found to exist to determine their amount. This, under the decisions, we think cannot be done.

The orders appealed from should be reversed, with ten dollars costs and printing disbursements, and the motion to vacate the injunctions granted, with ten dollars costs.

VAN BRUNT, P. J., concurred.

Order reversed, with ten dollars costs and printing disbursements, and the motion to vacate the injunctions granted, with ten dollars costs.