## THE VIGILANCIA.

### THE SEGURANCA.

HUNTINGTON et al. v. FREIGHTS OF THE VIGILANCIA et al. SAME v. THE SEGURANCA et al. BROWN et al. v. FREIGHTS OF THE SEGURANCA et al. ATLANTIC TRUST CO. v. SAME. GRAY, Receiver, v. SAME.

(District Court, S. D. New York. October 16, 1894.)

1. MARITIME LIEN—FREIGHTS—STATE COURT DEPOSITARY—CONFLICT—ATTACHMENT IN ADMIRALTY.

Where maritime freights were proceeded against in the state court in equity without jurisdiction, and were in the hands of a depositary: *Held*, that a subsequent attachment in admiralty to enforce a maritime lien thereon was valid.

2. HYPOTHECATION OF FREIGHTS—LETTERS OF CREDIT—MORTGAGEE—RECEIVER.

Upon facts and claims of the same general nature as in the case of Freights of the Kate, 63 Fed. 707, the same rules applied.

In Admiralty. Liens upon freights.

Benedict & Benedict, for libellant C. P. Huntington.

Cary & Whitridge and W. P. Butler, for petitioners John Crosby Brown and others.

Carter & Ledyard, Mr. Baylies, and Mr. Goodrich, for petitioner Atlantic Trust Co., mortgagee.

Stetson, Tracy, Jennings & Russell and Mr. Van Sinderen, for petitioner Henry Winthrop Gray, receiver of U. S. & Brazil Mail S. S. Co.

BROWN, District Judge. The libel first above named was filed on April 13, 1894, to enforce an alleged maritime lien upon the sum of about $30,000, on deposit in the Central Trust Company of this city, being the net freights earned by the steamships Advance, Allianca and Vigilancia on their last voyages respectively from Brazil to this port, all arriving on the same day, February 21, 1893. The steamers all belonged to the United States & Brazil Mail Steamship Company, and were run in their service. That company failed on February 23, 1893. On March 18, 1893, the petitioner Gray was appointed receiver by the state court, and that appointment was made permanent on March 6, 1894.

Upon a suit in equity brought in the supreme court of this state by the petitioner, John Crosby Brown and others in February, 1893, to enforce their claim to a lien upon these freights, upon an alleged express hypothecation thereof as collateral security for letters of credit issued by them to the steamship company, the freights were deposited under stipulation with the Central Trust Company, as depositary, to abide the decision of that action, to which afterwards the receiver was made a party.

Upon an appeal in that action to the general term of the supreme court from an interlocutory order granting an injunction, it was held by the general term that that court had not jurisdiction of the cause, as its object was to enforce a lien that was maritime, by a suit in equity, contrary to the provisions of the United States constitution, and the ninth section of the judiciary act (Rev. St. U. S. § 711), by which the federal courts alone have cognizance of such actions.    Brown v. Gray, 70 Hun, 261, 24 N. Y. Supp. 61.

Objection was made on the receiver's behalf to the service of process on the Central Trust Company in the libel first above named, and the jurisdiction of this court was denied, on the ground that the fund is sub judice and in control of the state supreme court under the stipulation above referred to.    The objection was overruled on two grounds:   First, that the objection is valid only when the state court has jurisdiction of the subject-matter, and is competent to adjudicate the cause (Moran v. Sturges, 154 U. S. 256, 274, 284, 14 Sup. Ct. 1019, reversing In re Schuyler's Steam Towboat Co., 136 N. Y. 169, 32 N. E. 623), which is not the case here, as the state supreme court has itself adjudged; and secondly, because the fund being in the hands of a depositary only, who is within the jurisdiction, it is competent for this court, which can alone adjudicate and enforce maritime liens, to proceed at once, and without delay, in the interests of justice, to adjudicate the maritime questions relating to said fund, upon due notice to the depositary and all others interested, and to render an appropriate decree, which, upon final adjudication, the state court would be bound to respect and to enforce, even if the fund was lawfully in its own custody as respects some part thereof not affected by maritime claims; and because the decree of this court would be binding upon any mere depositary, as respects the amount subject to maritime claims.    The practice in all such cases has been to proceed with the cause.    See The Caroline, 1 Lowell, 173, Fed. Cas. No. 2,419, and The Sailor Prince, 1 Ben. 234, Fed. Cas. No. 12,218, where this subject is fully discussed.    Nothing but intolerable confusion, and delays equivalent to a denial of justice, could result from a contrary practice.

The Seguranca, on her arrival, was attached under process issued out of this court before the delivery of her cargo.    The net freights collected were deposited under the order of this court with a depositary, amounting to about $8,500, without prejudice to any and all liens thereon.    A few days afterwards, on April 13, 1893, the libel of Mr. Huntington, against the Seguranca and her freights, was filed.

To the first-named libel of Mr. Huntington, all the other petitioners above named have made answer, and have filed claims to the same freights.

All of these opposing claims are of the same kind, and are based upon the same grounds, as set forth in the decision of the cases of Gray and others against the freights of the steamship Kate and four other chartered vessels, tried at the same time herewith. The owners of the chartered vessels have no interest in the present cases; as regards the other claims, the rules of decision applied in those cases are to be applied here.

The evidence indicates that a part of the moneys raised at Rio by the drafts drawn upon the letters of credit guarantied by Messrs. Huntington and Pratt & Co., were applied to pay some of the necessary disbursements for all the steamships above named upon their last trips from Brazil by which these freights were earned; and that they have consequently a specific lien to some extent upon these freights, under the agreement by which the guaranty was procured.

The Vigilancia, on her voyage out, arrived at Rio de Janeiro on January 4, 1893, left for Santos January 6th, arrived there January 7th, and left on January 27th for Rio, where she arrived on the 28th, and sailed thence for New York on February 2d.

The Advance arrived at Santos January 21, 1893; left there on the 23d for Rio, where she arrived January 24, and sailed thence for New York on January 28th.

The Allianca arrived at Rio January 19, 1893; left on the 21st for Santos, where she arrived on the 22d; left there on the 24th, reached Rio on the 25th, and sailed thence for New York on January 29.

The Seguranca arrived at Rio on February 11, 1893; left on the 14th; arrived at Santos on the 15th of February, and left on the 17th for Rio, which she reached on the 18th, and sailed thence for New York on February 26th.

None of the disbursements testified to as made in November or December for these vessels at Rio or Santos could, therefore, have been made on account of the last voyages; but other disbursements testified to as made for them in January and February, were in part at least for the last voyages. During these months large amounts were obtained from the drafts drawn upon the letters of credit guarantied by Huntington and Pratt & Co.; and during January, £4,000 were also obtained upon drafts drawn upon Brown Bros. & Co. This was exhausted, as the evidence shows, by the end of January, so that no part of Brown Bros. & Co.'s drafts went specifically to disburse the Seguranca on her last voyage. Each, however, have a specific lien for so much of the necessary disbursements for either of these vessels as upon a reference they can trace as paid for the last voyages by the proceeds of their own drafts; and for such further necessary disbursements for those voyages as were paid by the commingled and concurrent funds supplied to both, they should share pro rata as specific lienors.

The specific liens, as thus ascertained, should be paid from the freights of each vessel, next after satisfying any claims for neces-

saries arising during the voyage after the vessel left Brazil, as well as the port expenses here and the charges attending delivery of cargo and collecting the freights; the seamen's wages, as I understand, having already been paid.

Should there be any residue remaining after the above claims are paid, the general liens in favor of Brown Bros. & Co. and of Huntington and Pratt & Co., under the express contract and the understanding of the parties, take precedence of the claims of the mortgagee and receiver, according to the decision in the cases against the freights of the Kate, etc. These liens will be more than sufficient to exhaust the residue of the fund; and they will divide the residue pro rata, according to the whole amounts remaining unpaid upon each.

An order of reference may be taken to adjust the amounts, if not agreed on.