ALLEN v. ÆTNA LIFE INS. CO.

(Circuit Court of Appeals, Third Circuit. May 18, 1906.)

No. 5.

1. GARNISHMENT—RIGHTS OBTAINED BY PLAINTIFF.

The service of a garnishment order does not operate as an assignment, legal or equitable, of a debt due from the garnishee to the defendant, nor establish between the plaintiff and the garnishee the relation of creditor and debtor, but simply gives to the plaintiff the statutory right to collect from the garnishee a debt due from the garnishee to the defendant not exceeding that due from the defendant to the plaintiff, and in default of voluntary payment by the garnishee the right to have execution therefor.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Garnishment, § 216.]

2. INSURANCE—EMPLOYER'S LIABILITY POLICY—CONSTRUCTION—GARNISHMENT.

By an employer's liability policy the insurer agreed "to indemnify" the assured "against loss from common law or statutory liability for damages on account of bodily injuries" to employés. After providing for notice to the insurer of any injury or claim, and that in case of suit all papers should be forwarded, it required the insurer to defend or settle the claim or to pay to the assured the amount of the indemnity provided. It further provided that "no action shall lie against the company * * * unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment." Held, that the company's undertaking to defend or settle a claim did not render it liable for a judgment rendered thereon, but that, its liability being only to indemnify the assured against loss, no valid claim existed against it until the judgment should be paid by the assured, and it could not therefore be held liable to the plaintiff in the judgment as garnishee.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1298.]

In Error to Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 137 Fed. 136.

Latimer P. Smith, Walter C. Douglas, Jr., and Francis Fisher Kane, for plaintiff in error.

Robert W. Archbald, Jr., and Simpson & Brown, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge. On December 13, 1902, the Ætna Life Insurance Company issued to Gilman & McNeil, a corporation, a policy of insurance, by which it agreed "to indemnify" that corporation, for one year from the date of the policy, subject to certain "general agreements" contained in the policy, "against loss from common law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered within the period of this policy by any employé or employés of the assured," etc. On February 27, 1903, within the term covered by the policy, Allen, the plaintiff in error, then employed by the Gilman & McNeil Company, the assured, received bodily injuries, for which he subsequently obtained judgment against

the assured. After the date of his accident and before commencing his suit, the assured was placed in the hands of a receiver, and after obtaining his judgment he caused an attachment execution to be issued against the assured, as defendant, and the insurer, as garnishee, which was returned nihil habet as to the defendant and "served" as to the garnishee. On this proceeding the circuit court gave judgment for the garnishee, and the writ of error brings that judgment before us for review. There is a general rule in garnishment proceedings that the plaintiff in the suit acquires no greater rights against the garnishee than the defendant himself possesses. A few exceptions to the rule exist, one of which is in a case where the defendant has fraudulently transferred property to the garnishee, but in the present case the general rule is applicable. The service of a garnishment order does not operate as an assignment, legal or equitable, of a debt due from the garnishee to the defendant, nor establish as between the plaintiff and the garnishee the relation of creditor and debtor. It simply gives to the plaintiff the statutory right to collect from the garnishee a debt due from the garnishee to the defendant, not in excess of the amount due from the defendant to the plaintiff, and, in default of voluntary payment by the garnishee, the right to have execution therefor. Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596, 619, 14 Sup. Ct. 710, 38 L. Ed. 565; Drake on Attachment (6th Ed.) § 458; The Olivia A. Carrigan (C. C.) 7 Fed. 507. If, then, the assured, or its receiver, has no present right of action against the insurer the judgment of the circuit court must be affirmed.

The counsel for the insurer contend that the policy of insurance is a contract of pure indemnity against actual loss sustained by the assured, and that it is not a contract by which the insurer guarantied the payment of any obligation or liability of the assured. The distinction between a contract to indemnify against loss and one to pay a liability has often been pointed out. Some of the cases on the subject are referred to in the opinion of the learned judge who tried this case in the Circuit Court. See 137 Fed. 136. But the counsel for the plaintiff in error, not denying the reasonableness of this distinction, contend that, in the present case, the policy of insurance is a contract to pay a liability, and not a mere contract of indemnity against loss. This contention is based on the language of the second and third clauses of the "general agreements" of the policy. The legal effect of these clauses can be understood only by reading them in connection with the first and seventh clauses. These four clauses are as follows:

"(1) The assured upon the occurrence of an accident shall give immediate written notice thereof, with the fullest information obtainable at the time, to the home office of the company at Hartford, Conn., or to its duly authorized local agent. He shall give like notice with full particulars of any claim that may be made on account of such accident, and shall at all times render to the company all co-operation and assistance in his power.

"(2) If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company every summons or other process as soon as the same shall have been served on him, and the company will at its own cost defend against such proceeding in the name and on behalf of the assured, or settle the same, unless it shall elect to pay to the assured the indem-

nity provided for in clause A of special agreements as limited therein. (Clause A limits the indemnity to $5,000.)

"(3) The assured shall not settle any claim except at his or its own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding, without the consent of the company previously given in writing; but he may provide at the time of the accident such immediate surgical relief as is imperative. The assured when requested by the company shall aid in securing information, evidence, and the attendance of witnesses and in effecting settlements and in prosecuting appeals."

"(7) No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within 60 days from the date of such judgment and after trial of the issue. No such action shall lie unless brought within the period within which a claimant might sue the assured for damages unless at the expiry of such period there is such an action pending against the assured, in which case an action may be brought against the company by the assured within 60 days after final judgment has been rendered and satisfied as above. The company does not prejudice by this clause any defenses to such action which it may be entitled to make under this policy."

Sanders v. Frankfort, etc., Ins. Co., 72 N. H. 485, 57 Atl. 655, 101 Am. St. Rep. 688, sustains the position of the plaintiff in error. In that case, which was one in equity, it appears that judgment in an action at law had been obtained by the plaintiff against the assured for personal injuries received while in the employment of the assured; that the insurer had issued a policy similar to the one before us, and had assumed the defense of the action at law until the rendition of the judgment, but took no writ of error and prosecuted no proceedings for review; that the property of the assured had been sold, under execution issued upon the judgment, for $1; and that nothing more had been recovered for the plaintiff. In the equity suit, the plaintiff contended that the policy was a contract, not to indemnify against loss, but to pay a liability; that as the judgment exceeded the amount of the insurance, the insurer was indebted to the assured in the full amount of the insurance; and that a court of equity had the power to require the indebtedness of the insurer to the assured to be applied, pro tanto, to the satisfaction of the indebtedness of the assured to the plaintiff. The Supreme Court of New Hampshire held that by the second clause of the "general agreements" the insurer agreed (1) to defend, (2) to settle, or (3) to pay the assured, and that the second and third of these engagements plainly provided for the performance of the contract of indemnity before the assured had suffered loss by actual payment of the judgment obtained against him. In holding that the obligation "to defend," which is the first of the above mentioned engagements, was not performed merely by contesting the suit until the rendition of judgment, the court said:

"In this case there has been execution, upon which the paper company's property has been sold. That the amount of the sale was nominal is immaterial. The fact discloses the abandonment of defense by the insurance company, their failure to settle the claim, and hence their liability to pay the insured the amount of the indemnity provided, unless it be established that the rendition of the judgment excuses the insurance company from further defense of the proceedings. Further evidence to the contrary is to be found in the provision of the contract" (see the third clause of "general agreements") "that the assured shall not settle any claim except at his own cost, nor interfere

in any negotiation for settlement or in any legal proceeding. The substance of these provisions is that, after notice of the suit to the insurer, unless the company pay him the indemnity, the assured's control over the matter ceases. He cannot settle the claim, nor can he conduct or direct the litigation. If the company settle or defeat the claim, the liability under which he labors is assumed and discharged by the insurer. In every possible event except the defeat of their effort to prevent judgment against the insured, the company agree to perform their contract without the previous payment of anything by the assured. If an exception were intended in this case, it seems probable that it would be plainly stated, or some good reason would be apparent for the different undertaking. None is perceived."

In considering the meaning of the eighth clause of the "general agreements" of the policy in that case (being the same as the seventh clause of the policy in the present case), the court said:

"The purpose of clause 8 was, therefore, to provide for the cases, if any should arise, where the company contended the claim arose from an accident not covered by the policy. It was intended to limit the liability of the company to damages ascertained by due course of judicial procedure in cases where they could not conduct the defense without waiving their claim that they were not liable, and as to which, if not liable, they were under no obligation to incur any expense. Its purpose was to prevent collusion between the plaintiff and the assured."

We have given to the opinion from which we have made the above extracts the very careful consideration demanded by the high authority from which it came, but we cannot concur in it. It seems to us not to give due effect to the language of the policy that the insurer agreed "to indemnify" the assured "against loss from common law or statutory liability for damages on account of bodily injuries," or to the seventh clause that "no action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within 60 days from the date of such judgment and after trial of the issue." By compliance with the first clause of the "general agreements" the insured puts the insurer upon inquiry as to whether the accident is one covered by the policy. By the second clause the assured is required, immediately after the commencement of suit, to forward the summons to the insurer. If the insurer insists that the accident is one not covered by the policy, it is manifestly his duty to give to the assured prompt notice of that fact to the end that the assured may himself take charge of the defense. If no such notice be given, the assured may assume that the insurer will, as required by the second clause, defend the suit, or settle the claim, or pay the indemnity to the assured. But the engagement to defend the suit does not mean that when the insurer has undertaken the defense and judgment has been rendered against the assured, the insurer must either prosecute a writ of error or pay the judgment. It means what a defendant means when he files a plea saying he "comes and defends" the suit, or what is meant when counsel are retained to defend a suit. When an insurer undertakes to defend an action brought against the assured, the real object of the undertaking is, not to defeat a judgment against the assured, which is only incidental to the real object, but to save himself from the obligation of

the policy to reimburse the assured for loss actually sustained by him in paying the judgment. If the insurer deems the plaintiff's cause of action so well founded and the plaintiff's claim for damages so reasonable that it would be unbusinesslike to expend money in a defense, he may, under the provisions of the second clause, pay the claim of the plaintiff directly to him or pay the amount of the indemnity to the assured. But if the insurer, for any reason, prefers to defend the suit, he has the right under the second clause to do so at his own cost; and in such event the assured is required by the third clause not to interfere. We think such a construction of the first, second, and third clauses is in accord with their fair meaning, and that it relieves us from the necessity of giving to the seventh clause the restricted construction adopted in Sanders v. Frankfort, etc., Ins. Co.

We are confirmed in the construction thus given to the policy before us by the opinion in a similar case rendered by the Supreme Court of Massachusetts in Connolly v. Bolster, 187 Mass. 266, 72 N. E. 981. There the court said:

"The real object of this second clause is plain when taken in connection with the third—it is plainly inserted as an additional obligation and privilege for the protection of the insurance company, on the assumption that it is for the pecuniary interest of the company to be given the conduct of and to defend the action which is to fix its liability and the amount to be paid when liable, rather than to leave that matter to be dealt with by the several persons insured, respectively. This does not result in the necessity of writing into clause 2 the qualifying words 'until final judgment,' as the plaintiff contends, for when final judgment is rendered ordinarily all defense is at an end. Nothing remains but a writ of review or a writ of error, and if such a proceeding were necessary it might well be held to be covered by the obligation to defend. But when the defense is ended and, in spite of the defense, judgment is rendered against the insured, there is nothing to do but pay. Making payment of a judgment against the defendant is no part of a covenant to defend the action. Whether the insurance company is bound to pay the judgment depends upon the terms of its agreement to indemnify the assured against loss, and the eighth clause [the same as the seventh clause in the policy before us] in terms provides that no action shall lie for 'any loss under this policy' unless brought by the assured 'to reimburse him for loss actually sustained, and paid by him in satisfaction of a judgment after trial of the issue.' In the case at bar Bell has not paid the judgment recovered by the plaintiff, and therefore has no claim against the insurance company."

As thus construed, the seventh clause is not inconsistent with the second and third clauses. The insurance company had the right to defend the action brought against the Gilman & McNeil Company, and is not estopped by that mere fact to deny its liability. Until the judgment shall have been paid by the Gilman & McNeil Company—or, possibly, by its receiver, concerning which no opinion is expressed—there exists no valid claim against the insurance company. The garnishment proceedings are therefore founded on a false theory. There is nothing due from the insurer to the assured. Consequently, there is nothing that can be the subject of garnishment proceedings as against the insurer. This conclusion renders it unnecessary to consider whether the plaintiff in error is not restricted, in his remedy, to a presentation of his claim to the assured's receiver, and whether, in the event of payment of a percentage of the judgment by the receiver, the receiver

himself would not be entitled to recover from the insurer the amount paid by him under the rule established in Travelers' Ins. Co. v. Moses, 63 N. J. Eq. 260, 49 Atl. 720, 92 Am. St. Rep. 663. Nor is it necessary to consider the point argued in the brief of the plaintiff in error concerning the power of a court of equity to compel payment of a debt by one who has assumed it, and thereby, in equity, become the principal debtor, since this is a suit at law, and not one in equity, and since, by our conclusion, the insurer has not assumed the indebtedness of the assured.

The judgment of the circuit court will be affirmed, with costs.