HUDSON v. NEW YORK & A. TRANSP. CO.

EMPIRE TRUST CO. v. HUDSON.

(Circuit Court, S. D. New York. December 28, 1909.)

MARITIME LIENS (§ 60*)—CIRCUIT COURTS OF UNITED STATES—JURISDICTION—MARITIME LIENS.

A Circuit Court of the United States, which through its receiver has sold vessels subject to maritime liens and liens under the state law for supplies, etc., has no jurisdiction to determine and enforce such liens; which belongs exclusively to the District Court in admiralty, under Rev. St. §§ 563, 711 (U. S. Comp. St. 1901, pp. 455, 577).

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 98; Dec. Dig. § 60.*]

In Equity. Suit by George P. Hudson against the New York & Albany Transportation Company; the Empire Trust Company, trustee, intervening. On exceptions to report of special master. Report confirmed in part.

Cowing, White & Wait, Jones, McKinney & Steinbrink, James W. & Charles J. McDermott, and Percy L. Clock, for exceptions.

Armstrong, Brown & Boland, opposed.

WARD, Circuit Judge. The steamers Saratoga and Frank Jones were sold by order of this court subject to maritime liens and liens under state laws for supplies, labor, and materials furnished on the credit of the vessel. Empire Trust Co. v. Hudson.

The special master appointed to pass upon all claims not only ascertained the amounts, but also determined which claims, if any, were entitled to liens upon the vessels. The only exceptions filed to the report are to the allowance or disallowance of these liens. This court has no jurisdiction over the subject of liens the discharge and enforcement of which belongs exclusively to the United States District Court. Rev. St. U. S. §§ 563, 711 (U. S. Comp. St. 1901, pp. 455, 577).

The exceptants rely upon an obiter dictum of Mr. Justice Brown in Pratt v. Coke Co., 168 U. S. 255, 259, 18 Sup. Ct. 62, 42 L. Ed. 458, and upon the decisions of Judge Hanford in the Circuit Court

for the District of Washington, McRae v. Bowers Dredging Co. (C. C.) 86 Fed. 344, and Cronenwett v. Boston & A. Transportation Co. (C. C.) 95 Fed. 52.

In the Pratt Case the plaintiff, Pratt, sued the Paris Gaslight Company in assumpsit for the agreed price of a patented machine. One of the defenses was that the plaintiff had agreed to defend any suit brought against the defendant for infringement of patents, that the National Gaslight Company had brought such a suit, plaintiff had refused to defend, and that the patent was void, for which reason the defendant rescinded the contract. The patent defense was an incident of the common-law action arising collaterally and not directly. The Supreme Court held that the state court was authorized to pass upon the validity of the patent, because otherwise the defendant would have been without a remedy. It could not remove the case to the federal courts, because the declaration contained no claim arising under the federal statutes or law, and it could not file a bill against the National Gaslight Company, because it, and not the National Gaslight Company, was charged as the offending party. Mr. Justice Brown said, for the purpose of illustration:

"The jurisdiction of state courts over patent cases is not more exclusive than that of the District Courts over cases of admiralty and maritime jurisdiction. Yet, when vessels have passed into the hands of an assignee or receiver, it has been the constant practice of courts of bankruptcy and equity to respect the liens given by the maritime law, to marshal such liens and direct their payment, precisely as a court of admiralty would have done. Scott's Case, 1 Abb. U. S. 336 [Fed. Cas. No. 12,517]; In re Kirkland, Fed. Cas. No. 7,842; In re People's Mail Steamship Co., 3 Ben. 226 [Fed. Cas. No. 10,970]; High on Receivers, § 138."

If this means that a court of equity can respect the liens by actually discharging or enforcing them like a court of admiralty, I think the authorities cited do not bear the proposition out. The question was not raised in Scott's Case. There the District Court in bankruptcy enforced admiralty liens against the balance of proceeds, in the hands of the assignee, of a vessel sold in an admiralty cause before the adjudication in bankruptcy. The lien creditors had no remedy anywhere else. In re Kirkland was a case in admiralty, so that nothing need be said about it. In Re People's Mail Steamship Co. a maritime creditor filed a libel in admiralty against the vessel after its owner had been adjudicated a bankrupt and the assignee had taken possession of it. Judge Blatchford enjoined him from further proceedings and held that the District Court sitting in bankruptcy, under section 1 of the act of March 2, 1867 (14 Stat. 517, c. 176), could ascertain and liquidate the libelant's claim. The two decisions made by Judge Hanford were rested entirely on the foregoing authorities, and the question of the jurisdiction of the Circuit Court does not seem to have been raised. Mr. Justice Brown could not have intended to say anything in the Pratt Case inconsistent with the case of Moran v. Sturges, 154 U. S. 256, at page 276, 14 Sup. Ct. 1019, at page 1025, 38 L. Ed. 981, in which Mr. Chief Justice Fuller said:

"But the question in the case at bar arises in respect of the state court and a District Court of the United States, whose cognizance of all civil causes of

admiralty and maritime jurisdiction is, under the 'Constitution and by the ninth section of the judiciary act of 1789 (reproduced in Rev. St. § 711), exclusive. The Lexington (New Jersey Nav. Co. v. Merchants' Bank) 6 How. 344, 390 [12 L. Ed. 465]; The Moses Taylor, 4 Wall. 411 [18 L. Ed. 397]; The Hine, 4 Wall. 555 [18 L. Ed. 451]; The Lottawanna, 21 Wall. 558, 580 [22 L. Ed. 654]; Johnson v. Chicago, etc., Elevator Co., 119 U. S. 388, 397 [7 Sup. Ct. 254, 30 L. Ed. 447]; The J. E. Rumbell, 148 U. S. 1, 12 [13 Sup. Ct. 498, 37 L. Ed. 345]. As said by Mr. Justice Miller: 'It must be taken as settled law of this court that, wherever the District Courts of the United States have original cognizance of admiralty causes by virtue of the act of 1789 that cognizance is exclusive, and no other court, state or national, can exercise it, with the exception always of such concurrent remedy as is given by the common law.' [The Hine v. Trevor] 4 Wall. 568 [18 L. Ed. 451]. The act saves to suitors in all cases 'the right of a common-law remedy, where the common law is competent to give it'; that is, not a remedy in the common-law courts, but a common-law remedy. Suitors are not compelled to seek such remedy, if it exist, nor can they, if entitled, be deprived of their right to proceed in a court of admiralty, according to the rules and practice of admiralty, and the state courts have no authority to hear and determine a suit in rem to enforce a maritime lien. The Belfast, 7 Wall. 624, 644 [19 L. Ed. 266]; The Josephine, 39 N. Y. 19, 27. A statutory proceeding to wind up a corporation is not a common-law remedy, and a maritime lien cannot be enforced by any proceeding at common law. These libelants were entitled to have their causes tried in the court of admiralty, and that right could not be taken away from them, nor would the decree or judgment of the state court be pleadable in bar to their libels. If, then, the receiver had first taken actual possession of these vessels and sold them, such sale would not have cut off maritime liens and the right to have them enforced, and while it may be true that the state courts, exercising equitable jurisdiction, might undertake, in the distribution of property, to save the rights of holders of maritime liens, yet it is certain that those court would have no power by a sale under statute to destroy their liens unless they had voluntarily submitted themselves to that jurisdiction."

He explains the case of Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028, as did Judge Blatchford in The Sailor Prince, 1 Ben. 234, Fed. Cas. No. 12,218, as proceeding on the principle of comity because the state court could neither enforce nor displace maritime liens. In the latter case Judge Blatchford said:

"Now, in my view, the principle decided in the case of Taylor v. Carryl ought not to be extended as against a lien of the character of that sought to be enforced by the libelants in this case. It is at best a rule of comity. It is a relinquishment by a court of admiralty—the only court which, under the Constitution and laws of the United States, has jurisdiction over the lien of seamen for their wages, or is authorized to enforce such lien—of its clear jurisdiction, in favor of a state court, which cannot enforce or display such lien, and has no jurisdiction over it, giving to the state court the right, for the time being, to obstruct and interfere with the lien and with the remedy of the seamen. That principle or rule of comity is, according to Taylor v. Carryl, to be sustained, in regard to a vessel which has been seized by and is in the lawful custody of the sheriff under process from the state court, so long as it is in such custody; the federal court being at liberty, when the litigation in the state court is ended, or when the possession of the sheriff is discharged, to take possession of the vessel and enforce against it admiralty liens. The lien of a seamen against the vessel for his wages will remain unaffected by any action of the state court in regard to the vessel. If the state court, in the suit in which it issued the process on which the vessel was seized and is held in custody, sells the vessel, the purchaser will take his title to her subject to the lien of the seaman for his wages, and the moment she passes out of the custody of the sheriff the seaman can enforce his lien, by serving process on her on a libel in the admiralty. Now, this rule of comity, thus regarded and limited and administered, may, perhaps, in ordinary cases, work no other mischief than to cause unnecessary and harsh delay in the enforcement of their

rights by a class of men whose paramount and superior claims are recognized in the codes of law of all commercial countries. The state court can seize and sell only the interest of the owner in the vessel over and beyond the amount of the liens of the seamen, and can convey no absolute right of property in the whole vessel to a purchaser. Legally, the lien remains, to be enforced the moment the hand of the state officer is withdrawn from the vessel. And the vessel, in theory at least, remains in specie, so as to be subjected to process for the enforcement of such lien."

I think that this court, sitting either at law or in equity, has no more power than the state courts have in this respect. The consideration which moved the court in the Pratt Case, viz., that the party was otherwise without a remedy, does not apply, because in this case the maritime lien creditors have a remedy in admiralty, and the vessel was sold subject to their liens for the express purpose of preserving it. Bankruptcy courts proceed in rem, and have statutory authority, either expressed or implied, to discharge liens for the purpose of a speedy and complete distribution of the bankrupt's assets among all his creditors.

The master's report is confirmed in all respects, except as to the allowance or disallowance of the liens under the maritime and state law. I will sign a decree applying the small fund on hand to the expenses of the receivership.